TORGER MITHEN, Defendant in Error, *vs.* CHARLES T. JEFFERY *et al.* Plaintiffs in Error.

*Opinion filed June 18, 1913—Rehearing denied October 8, 1913.*

1. TRIAL—*attorney must not ask questions tending to inform the jury that the defendant is insured.* An attorney in a personal injury case should not inform the jury that the defendant is insured against liability in the suit on trial, and it is improper for him to accomplish that purpose indirectly by asking questions having that effect when examining persons offered as jurors.

2. SAME—*examination of jurors should be confined to reasonable limits.* An attorney has a right to ascertain whether a juror has any interest in or relation to the suit or in suits of the same character, but the examination should be so conducted as not to inform the jury that the defendant is insured against liability, and should not be extended to an unreasonable length with regard to the juror's acquaintance with different individuals, and like matters.

3. NEGLIGENCE—*when rights and duties of parties are governed by laws of foreign State.* Where the injury for which a suit is brought in Illinois occurred at the factory of the defendant in another State, where the plaintiff was employed, the rights and duties of the parties are to be determined by the laws of the foreign State; but a motion in the case to direct a verdict for the defendant is governed by the rules of practice in the courts of Illinois, and raises the question whether there is any evidence fairly tending to prove a cause of action.

4. MASTER AND SERVANT—*law recognizes master's duty to instruct a youthful and inexperienced servant.* The law recognizes the master's duty to warn against dangers which may be encountered in his service a servant who by reason of his youth and inexperience may not appreciate or understand the same, and he must use reasonable care to instruct the servant in order to enable him to guard himself from injuries, the degree of care being measured by the youth or inexperience of such servant.

5. SAME—*when master is not required to warn minor of particular danger.* The master is not required to warn a minor servant of an ordinary and commonly known danger, unless there is reasonable ground for apprehension, on account of the immaturity or inexperience of the servant, that he will need instruction to avoid such danger.

6. SAME—*the laws of Wisconsin do not require instruction to servant not to put his hands in moving machinery.* Under the laws of Wisconsin a servant eighteen years old and of average intelli-

gence is presumed to know that it is dangerous to allow his hands to come in contact with moving machinery, and where such machinery is in plain view the master is not required to warn him specially against letting his hands get caught therein.

7. SAME—*test as to whether a minor assumed the risk or was guilty of negligence.* Under the laws of Wisconsin the test in determining whether a minor servant whose hand was caught in exposed machinery in plain view assumed the risk or was guilty of negligence is not whether he in fact knew and comprehended the danger, but whether, under the circumstances, he ought to have known and comprehended it.

8. SAME—*when minor servant cannot excuse act as being done under a general instruction.* Under the laws of Wisconsin, if a minor servant eighteen years old and of average intelligence is instructed to oil the center-pin carrying one end of the shaft of a milling machine, the moving cutting wheels of which are in plain view, and is shown how to do the oiling in a safe way, he cannot excuse his act in putting his hand on the moving wheels when attempting to oil the shaft by claiming he had a general instruction to do the work.

9. SAME—*when evidence that foreman promised to make a repair is not admissible.* In the absence of any averment in the declaration of any promise to repair the machine, which would have the effect to relieve the servant working with it from the assumption of risk for a reasonable time, evidence that the foreman said he would fix the machine when the servant was through with the work,—that they were in a hurry for the work,—is not admissible, even though one of the counts sets out a notice, given under the law of the State where the injury occurred, stating that the servant, at the time of the injury, was working on the machine relying upon the foreman's assurance that it would be repaired.

10. SAME—*when instruction as to providing safe place to work does not apply.* An instruction stating that it is the duty of the master to exercise reasonable care to furnish his servant with a reasonably safe place to work, has no application to a case where the servant was injured by putting his hand against the revolving cutting wheels of a milling machine when attempting to oil a center-pin supporting a shaft in the machine.

11. SAME—*what does not involve questions of unusual risk or obedience to command.* A mere direction by a foreman to a servant to oil the center-pin of a machine if it got hot, without giving any directions how to do it except to show how to do it in a safe way, does not involve the questions of extraordinary or unusual risk or the performance of an act attended with danger in obedience to a command of the master.

Writ of Error to the Branch "D" Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. Farlin Q. Ball, Judge, presiding.

Frank M. Cox, and R. J. Fellingham, for plaintiffs in error.

Chase R. Rankin, C. H. Johnson, and Daniel Belasco, for defendant in error.

Mr. Justice Cartwright delivered the opinion of the court:

Torger Mithen, defendant in error, was in the employ of Charles T. Jeffery and Harold Jeffery, plaintiffs in error, in their factory in Kenosha, Wisconsin, and on August 6, 1906, he was injured while oiling a milling machine which he was operating. He was eighteen years and six months of age at the time, and brought his suit, by his next friend, in the superior court of Cook county to recover from plaintiffs in error damages on account of the injury. The averments of negligence in the various counts of the declaration, under which evidence was introduced, were: (1) That the defendants, by their foreman, negligently ordered the plaintiff to oil the machine while in motion, and that he was injured while obeying the order; (2) that the plaintiff was a minor and ignorant and inexperienced, whereby it became the duty of the defendants to warn him of the danger of working upon the machine in its alleged defective condition, which they did not do; (3) that the milling machine which the plaintiff was operating was out of order, in that the cutting knives of the machine wabbled and the machine jerked and shook. There was a trial, at which the jury returned a verdict for the plaintiff for $15,000. Defendants entered their motion for a new trial, and the court being of the opinion that the damages awarded were excessive, offered the plaintiff the alternative of a new trial or

a *remittitur* of $5000. The *remittitur* was entered, whereupon the motion was overruled and judgment was entered for $10,000 and costs. An appeal was taken to the Appellate Court for the First District and the cause was assigned to Branch "D" of that court. The majority of the judges were of the opinion that the second charge, of a failure to instruct, was sustained by the proof, and that while the trial court might well have stricken out an answer concerning a promise to repair, there was no error which was ground for a reversal, and the judgment was affirmed. Upon consideration of a petition for a writ of *certiorari* to bring the record here for review the writ was granted.

During the examination, as to his competency, of one summoned as a juror he testified that his business was all kinds of insurance, including liability insurance. The following questions and answers followed: "Do you know Mr. Jackson?"—"No." "Mr. Snow, here?"—"No." "The Travelers Insurance Company?" Objection was made to the last question, and while the court was considering the motion the attorney for defendants moved to discharge the panel on account of the questions being asked. The court overruled the motion, to which the attorney excepted and then stated that his objection was to the question. The attorney for plaintiff then further examined the juror as to whether, in handling liability insurance, he came in contact with personal injury claims, to which he answered that the corporation did but he did not, and that his work was fire losses. He was peremptorily excused. It is urged that the propriety of the question was not saved for review, but we are of the opinion that it was. Objection was made to the question, and while the attorney for the defendants also made a motion to discharge the panel, he stated at the time of the ruling that his objection was to the question. It is not proper for an attorney to directly inform a jury that a defendant is insured against liability in the suit on trial, and, of course, the attorney cannot be permitted to accom-

plish the same result indirectly in the examination of jurors. It is the right of an attorney to ascertain whether a juror has any interest in or relation to claims or suits of the same character as the one being tried, for the purpose of exercising the right of peremptory challenge, (*Iroquois Furnace Co.* v. *McCrea,* 191 Ill. 340,) but that can be readily done by an examination which would not lead the jury to understand that the defendant is insured against liability and is without substantial interest in the question of damages. The purpose of an attorney in making such inquiries as were allowed in this case is to inform the jury that a defendant is insured, and such an examination is improper. (*Eldorado Coal Co.* v. *Swan,* 227 Ill. 586; *McCarthy* v. *Spring Valley Coal Co.* 232 id. 473; *Aetitus* v. *Spring Valley Coal Co.* 246 id. 32.) There is a further objection that the interminable examination of jurors, so often made as to different individuals and every conceivable relation to them, should not be indulged in. Where the court has correctly ruled and it has been evident that the questions had no effect upon the jury the examination has not always been considered ground for reversing a judgment, but in this case the verdict was so large that the court required a *remittitur,* which the plaintiff was willing to enter. It is not necessary to decide whether the error of the court, alone, would be ground for reversal if there were no other erroneous and prejudicial ruling.

The injury to the plaintiff occurred in the State of Wisconsin and the rights and duties of the parties were to be determined by the laws of that State which regulated their relations to each other. (*Christiansen* v. *Graver Tank Works,* 223 Ill. 142.) The parties introduced their evidence concerning the facts and each of them also offered in evidence decisions of the Supreme Court of that State, after which the defendants moved the court to direct a verdict of not guilty. That motion was governed by the rules of practice in the courts of this State and raised the question

whether there was evidence fairly tending to prove a cause of action. The evidence most favorable to plaintiff was to be taken as true, and it tended to prove the following facts:

The plaintiff was born in Norway, where he attended school from eight to twelve years of age and afterward worked at farming. He came to this country in 1905, when he was seventeen years of age, and worked on a farm in Wisconsin about one year. He then went to Kenosha and worked in a lamp factory five or six months, and then went to work for the defendants and had worked for them eleven or twelve days before the accident. He first operated for three or four days a drill-press, which was run by steam power and drilled holes in iron or steel, and then worked three or four days on a vise, filing gears, after which he was set to work tending two milling machines and had tended them several days when he was injured. The frame of the milling machine which caused the injury consisted of upright sides about five feet high and three feet apart, and they were connected at the top by a horizontal steel rod, called an "arbor support." Under the arbor support, and parallel with it, there was a steel shaft. Standing in front of the machine, the left end of the shaft rested in the left upright part, and the other end was supported by and turned on an adjustable center-pin extending from the other upright and entering the center of the end of the shaft. Upon the shaft there were wheels about six inches in diameter, with cutting edges about one inch wide, and there was a space between the wheels and the arbor support above them. The wheels turned with the shaft toward the arbor support at the rate of about thirty revolutions a minute, and they were used to cut iron or steel, which was fastened on a table on the opposite side. The iron or steel was fastened on a sliding table, which, when started, moved up automatically to the wheels. There had been one wheel on the shaft until the morning of the accident, when four wheels were put on for the purpose of cutting an automobile yoke.

This yoke forked at the end next the wheels, and the wheels would cut each side of the two ends of the fork to the proper dimensions. Along toward noon the machine was chattering or making a shaking, grinding noise more than usual and it ran hot at the center-pin. The plaintiff spoke to the foreman about the noise the machine was making, and the foreman came and found the center-pin in the end of the shaft at the right of the cutting wheels, and between them and the upright, hot and smoking. There was an oil can which the plaintiff used in filling the cups about the machine with oil, and the oil was ejected by pressing on the bottom of the can, causing the oil to come out of the spout. The foreman took the oil can and oiled the center-pin and told the plaintiff that it was necessary to oil it while running, and if it got hot again the plaintiff should oil it. About one o'clock in the afternoon the machine was chattering again and the cutting wheels wabbled a little up and down to the extent of one-thirty-second of an inch. The plaintiff took the oil can and started to oil the center-pin as the foreman had done. He used his left hand and his sleeves were rolled up near the shoulder. In doing the oiling he put his left hand on the cutting wheels and it was drawn in under the support by the turning wheels, so that he lost his arm. The wheels were directly in front of him, in plain view, turning from him at the top, under the arbor support. There was no obstruction to the view except his hand, and he said he could have seen the wheels if he had looked at them but thought there was room enough for his hand. It was, of course, apparent that he could see the space for the oil can and the relation of the cutting knives to the space to be oiled. There was no evidence tending to prove any command of the foreman to encounter a danger which was not perfectly obvious to anyone of ordinary intelligence, and the plaintiff was not misled by any order of the foreman, who merely told him to oil the center-pin while it was running if it got hot again. There was no direction

of the particular manner in which the oiling was to be done, and the foreman did it in his presence in a way that was safe. There was no negligence or improper order of the foreman, and nothing more than a statement of the necessity of oiling the center-pin if it became hot. Plaintiff testified that the wheels jerked while he was doing the oiling, but that fact had no connection with the injury and neither caused nor contributed to it. If the plaintiff put his hand on the cutting wheels it would be carried forward under the arbor support whether the wheels turned with perfect steadiness or trembled and there was a vibration up and down, and if he did not touch them he would not be hurt.

The law recognizes and enforces a duty of a master to warn and instruct against dangers which may be encountered in his service, a servant who, on account of youth and inexperience, is not likely to appreciate or understand the same. The master must use reasonable care to instruct such a servant in order to enable him to guard himself from injuries, and the degree of care is measured by the youth, ignorance or inexperience of the minor. If the defendants ought reasonably to have apprehended that the plaintiff, by reason of immaturity or lack of experience, might put his hand on the revolving cutting wheels in front of him, or that he would need instruction to avoid that danger by keeping his hands off them, the law would require them to inform him of that danger, but if there was no reasonable ground for such apprehension there was no such duty. The law of Wisconsin, as shown by decisions of the Supreme Court of that State, is, that a minor of the capacity and intelligence of the plaintiff need not be instructed by his master that it is dangerous to allow his hands to be caught in machinery which is in plain view, because there is no need of such instruction; that a person of average intelligence, and even of a less age than the plaintiff, must be presumed to know that it is dangerous to allow his hands to come in contact with moving machinery; that the true test

whether the minor has assumed the risk or is guilty of negligence is not whether he in fact knew and comprehended the danger, but whether, under the circumstances, he ought to have known and comprehended it, and that where he is not instructed to do work in a way that his hand will come in contact with machinery, he cannot excuse himself by saying that he had a general instruction to do the work. (*Roth v. Barrett Manf. Co.* 96 Wis. 615; *Helmke v. Thilmany,* 107 id. 216; *Schiefelbein v. Badger Paper Co.* 101 id. 402; *Groth v. Thomann,* 110 id. 488; *Thompson v. American Writing Paper Co.* 143 id. 598.) In *Horn v. LaCrosse Box Co.* 131 Wis. 384, the plaintiff, a boy fifteen years of age, lost one of his hands by coming in contact with the revolving knives of a planer. He was set to work at the planer without instruction as to perils and had worked twenty-three days. The Supreme Court approved instructions given by the trial court stating the above rules of law. Under these rules the evidence most favorable to the plaintiff did not establish a cause of action or tend to prove a neglect of any duty on the part of the defendants which caused or contributed to his injury, and the court erred in refusing to direct a verdict.

On the examination of the plaintiff he was asked if the foreman said anything, when he came and oiled the center-pin, about fixing the machine. The answer was that the foreman said he would fix it when he was through with that work,—that they were in a hurry for the work. The court overruled a motion to strike out the answer. There was no charge in the declaration of any promise to repair the machine which, in law, would relieve a servant from assumption of risk for a reasonable time to permit the repair. One of the counts set forth a notice given under the law of Wisconsin, which stated that at the time of the injury the plaintiff continued working on the machine, relying on the assurance of the foreman that the same would be repaired; but that did not amount to an allegation of

the fact, and the negligence averred in the same count was different and inconsistent with an averment of that kind. The court erred in the ruling for lack of any averment of the fact in the declaration.

The instructions given at the request of the plaintiff were almost all purely abstract statements of rules of law. The seventh referred to assumption of risk, and told the jury that a servant does not assume extraordinary or unusual risks, nor risks due to the master's own negligence, unless the servant had notice of such perils or by the exercise of ordinary care should have had notice thereof. It was not applicable to the evidence in the case, because there was no evidence tending to show that the risk which the plaintiff encountered in oiling the center-pin was unusual or extraordinary or that it was due to the defendants' negligence. Oiling running machinery is not unusual or extraordinary and the foreman did not give any order or direction to increase the hazard. The ninth told the jury that it was the duty of the master to exercise reasonable care to furnish the servant with a reasonably safe place to work, and the instruction would naturally lead the jury to believe that the duty was in some way involved in the case, which was not a fact. The eleventh, which was another abstract statement of a rule of law, related to the performance by a servant of an act attended with a degree of danger in obedience to a command, and the degree of prudence required of the servant under such circumstances. There was no evidence of any command which would justify an instruction of that kind. The only evidence of any order was that the foreman told the plaintiff if the center-pin got hot he was to oil it, without any direction as to how it should be done, and there was no question of balancing the degree of danger and deciding whether to do the act or refrain from it.

The judgments of the Appellate Court and the superior court are reversed and the cause is remanded to the superior court.                    *Reversed and remanded.*