Jones, J.,
 

 dissenting. It was assumed, only, that there might be a casualty company interested in the trial. Eighteen jurors were called before the jury panel was filled. On their
 
 voir dire
 
 examination counsel for the plaintiff propounded to each juror a series of questions, containing suggestions that a liability company was interested in the result of the suit. These questions were asked in the following form: (a) “Are any of you owners of stock in any liability insurance company?” (b) “Are any of you members on the jury employed by any casualty in
 
 *173
 
 surance company that writes automobile liability insurance?” (c) “Are any of your relatives or close personal friends connected with as an employee or in any employment with any insurance company that writes automobile liability insurance?”
 

 Counsel for the defendant not only repeatedly objected and excepted to the court’s ruling permitting the' questions to be asked, but also asked for the withdrawal of a juror and a mistrial of the cause.
 

 It does not appear that plaintiff’s counsel had any cause to believe that any of the panel had any interest whatever in any liability or casualty insurance. The questions are evidently a compilation culled from various court decisions, but, even so, they embrace a much wider scope than is usually allowed by the courts. Each juror was queried as to his connection, as a stockholder or employee, with
 
 any
 
 casualty insurance company, and whether he had a relative or close personal friend in the employment of
 
 “any”
 
 insurance company writing automobile insurance. It is submitted that such questions take too wide a scope, and, by their extension to
 
 “any”
 
 insurance company, go too far afield, since “any insurance company” may include some company doing business in Ohio or Birmingham. We cannot conceive how the employment of a remote relative, much less a “close personal friend,” in
 
 any
 
 insurance company would be so prejudicial as to be a cause for challenge. And this would be especially true unless the juror was advised that his relative or “close personal friend” was employed in a company actually indemnifying the party to the cause. This record discloses without doubt, that, had no questions been propounded suggesting that Pavilo
 
 *174
 
 nis might be insured, every member of this jury would have been absolutely innocent of knowledge that any casualty company was involved, and would have been free to exercise his judgment impartially between the actual parties to the suit. Pavilonis had the right, not only to an impartial court, but to an impartial jury, and had the right to a trial upon the issues of negligence, unhampered by the voluntary suggestion, frequently repeated, that Pavilonis might be insured, and, in case of an unfavorable verdict, would be able later to recoup, either partially or wholly, from a casualty company not a party to the suit.
 

 We recognize the fact that the courts of this country, including the lower courts of our own state, are not in accord upon this subject, but substantially every court acknowledges and appreciates the prejudicial character of questions suggesting the'liability of an insurance company, where such company is not a party. Were -we to balance the just and reasonable rights between the parties for the purpose of securing an impartial trial upon the real issues, we are convinced that questions of this character, propounded to jurors on their
 
 voir dire,
 
 are extremely damaging and prejudicial, and that plaintiff’s counsel could safeguard his justifiable right of challenge by methods which do not suggest that an indemnifying company will pay, either partially or in whole, the amount of the verdict assessed against the defendant. It is very easy to ascertain what a juror’s employment is without asking whether he is employed by a casualty company. If counsel desires that information, all that would be necessary to acquire it would be to ask each individual juror what
 
 *175
 
 his occupation is. This could be accomplished without asking the juror whether he was connected with or employed by a casualty company. As a matter of fact, in this case each of the eighteen individual jurors was interrogated by plaintiff’s counsel as to his specific employment, and each gave an answer disclosing that his employment had no connection whatever with any casualty company; so that in two of the questions propounded the information which counsel for plaintiff sought had been actually and satisfactorily obtained by asking each juror what his occupation was, and not only did counsel ascertain the occupations of the men on the panel, but the occupation of both wife and husband, if the juror was married. He could likewise have ascertained the occupation of any immediate member of the family. And if counsel for plaintiff desired in good faith to ascertain whether a juror was a stockholder in a casualty company, he could readily have acquired this information by asking the juror if he had any interest, directly or indirectly, in the result of the case on trial, or by asking him if he was a stockholder in any corporation, and, if so, what corporation.
 
 Hoyt
 
 v.
 
 J. E. Davis Mfg. Co., 112
 
 App. Div., 755, 758, 98 N. Y. S., 1031;
 
 Putnam, Admx.,
 
 v.
 
 Pacific Monthly Co.,
 
 68 Or., 36, 130 P., 986, 136 P., 835, 45 L. R. A. (N. S.), 338, 344, L. R. A., 1915F, 782, Ann. Cas., 1915C, 256;
 
 Mithen
 
 v.
 
 Jeffery,
 
 259 Ill., 372, 376, 102 N. E., 778. These cases are cited for the purpose of showing that, if counsel had desired in good faith, for the purpose of challenge, to inquire as to the interest of a juror in the cause on trial, he could have obtained this information by disclosure of such interest or occupation without
 
 *176
 
 suggesting that a casualty company may be involved. In the instant case, counsel did obtain information as to each juror’s individual employment, and there was no need of suggesting the connection of an insurance company, and he could have ascertained his interest as a stockholder, if there were any such, by asking the juror whether he had any financial interest, direct or indirect, in the cause on trial. As it turned out, while each one of the eighteen jurors called disclaimed any connection with a casualty company, each of them was inoculated with the very prejudicial suggestion that an insurance company was actually involved, and that a verdict against the defendant would be mitigated by recoupment from his insurer. This and this only was accomplished by the
 
 voir dire
 
 examination; here is a concrete case showing the unwisdom of such examination, which, while resulting in no cause for challenge to the plaintiff, was extremely damaging to the defendant.
 

 By affirmance of this method of procedure this court places its stamp of approval upon suggestions that a defendant may be indemnified against damages which the jury may assess against him. Not only that, but it approves
 
 voir dire
 
 interrogatories seeking information whether a juror has a “relative” (however remote) or “a close personal friend” employed somewhere in some company which writes automobile insurance. Three members of this court are of opinion that the stamp of disapproval should be placed upon such procedure, that the method of examination was extremely prejudicial, and that the cause should be reversed for that reason.
 

 Kinkade, J., concurs in this dissenting opinion.