MAXWELL TRUST, TRANSFEREE, CENTRAL NATIONAL BANK AND TRUST COMPANY AND ROSS H. SIDNEY, TRUSTEES, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 4516–70, 4517–70. Filed June 12, 1972.

*Thomas W. Carpenter* and *Roland E. Grefe*, for the petitioners.
*Ronald M. Frykberg*, for the respondent.

---

[1] *United States* v. *White*, 311 F. 2d 399, 403 (C.A. 10, 1962).

## OPINION

Irwin, *Judge:* Respondent determined the following deficiencies in estate taxes:

| Docket No. | Taxpayer | Deficiency |
|---|---|---|
| 4516–70 | Estate of Howard C. Maxwell | $46,979.20 |
| 4517–70 | Estate of Betty J. Maxwell | 136,574.78 |

After settlement of all other issues the only question for determination is whether settlement payments received in wrongful-death actions for the deaths of Howard C. Maxwell and Betty J. Maxwell are to be included in their gross estates either under section 2033 or section 2041.[1]

All of the facts have been stipulated and are found accordingly.

The Maxwell Trust is petitioner in each case by virtue of being the transferee of assets from the estates of Howard C. and Betty J. Maxwell. Ross H. Sidney, an attorney and resident of Des Moines, Iowa, at the time the petitions were filed, and the Central National Bank & Trust Co., a corporation chartered and existing under the laws of the United States with its offices in Des Moines, Iowa, at the time the petitions were filed, are the duly qualified and acting trustees under the Maxwell Trust.

Howard C. Maxwell and Betty J. Maxwell, husband and wife, died on March 4, 1966. At the time of their deaths the decedents were domiciled in and residents of the State of Iowa. Estate tax returns for the estates of Howard C. Maxwell and Betty J. Maxwell were filed with the district director of internal revenue, Des Moines, Iowa, on June 2, 1967.

On March 4, 1966 (March 5, 1966, in Japan), the decedents were passengers on a Boeing 707 jetliner, en route from Tokyo, Japan, to Hong Kong, China, operated by British Overseas Airways Corp. (BOAC), which crashed on the eastern slopes of Mt. Fuji, Japan, and caused the deaths of the decedents. The jetliner was manufactured by the Boeing Co. (Boeing) and sold to BOAC prior to March 4, 1966, for the use in its business as a common carrier of passengers for hire upon aircraft. The parties stipulated that there is no evidence that the decedents died otherwise than simultaneously.[2]

The decedents were survived by their two daughters, JoRita Maxwell Gorman, residing at the time of death in Omaha, Nebr., and

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended.

[2] In addition the parties proceeded in this Court as if the deaths were simultaneous.

Charlene Maxwell, residing at the time of death in Altoona, Iowa. Howard C. Maxwell was also survived by his parents, Lawrence and Ethel Maxwell, who resided in Altoona, Iowa, and a brother, Francis H. Maxwell, who resided in Bedford, Iowa. Betty J. Maxwell was also survived by her parents, Weldy and Velma Black, who resided in Des Moines, Iowa, a brother, Donald B. Black, who resided in Muscatine, Iowa, and a brother, Richard L. Black, who resided in Altoona, Iowa.

Howard C. Maxwell and Betty J. Maxwell died testate. Their wills were admitted to probate by the District Court of the State of Iowa, in and for Polk County (Polk County District Court) on March 7, 1966, and on such date Ross H. Sidney and Central National Bank & Trust Co. were appointed executors of each estate by the Polk County District Court. Ross H. Sidney was appointed guardian of the property of Charlene Maxwell, a minor, on April 4, 1966.

On June 30, 1966, after obtaining the permission of the Polk County District Court, the executors commenced a cause of action in the Circuit Court of Cook County, Ill., County Department, Law Division (Cook County Circuit Court) captioned:

JORITA GORMAN; CHARLENE MAXWELL, A Minor, by ROSS H. SIDNEY, Her Guardian and Next Friend in this behalf; and ROSS H. SIDNEY and CENTRAL NATIONAL BANK, as Executors of the Estates of HOWARD MAXWELL and BETTY MAXWELL, Deceased, for the use and benefit of JORITA GORMAN and CHARLENE MAXWELL, [as] Plaintiffs, [against] THE BOEING COMPANY, a corporation; and BRITISH OVERSEAS AIRWAYS CORPORATION, a corporation, [as] Defendants.

and docketed as case No. 66 L 10463.

The complaint made various allegations of negligence and breach of warranty against defendants and prayed for $2 million in damages. Recovery in the complaint was predicated in the main upon articles 709, 710, and 711 of the Civil Code of Japan.

The Civil Code of Japan in effect on March 4, 1966, provided, in part, as follows:

Article 709. A person who violates intentionally or negligently the right of another is bound to make compensation for damage arising therefrom.

Article 710. A person who is liable in compensation for damages in accordance with the provisions of the preceding Article shall make compensation therefor even in respect of a non-pecuniary damage, irrespective of whether such injury was to the person, liberty or reputation of another or to his property rights.

Article 711. A person who has caused the death of another is liable in compensation for damages to the parents, the spouse, and the children of the deceased, even in cases where no property right of theirs has been violated.

The Code of Iowa in effect on March 4, 1966, provided, in part, as follows:

611.20 * * *

All causes of action shall survive and may be brought notwithstanding the death of the person entitled or liable to the same.

613.15 * * *

In any action for damages because of the wrongful or negligent injury or death of a woman, there shall be no disabilities or restrictions, and recovery may be had on account thereof in the same manner as in cases of damage because of the wrongful or negligent injury or death of a man. In addition she, or her administrator for her estate, may recover for physician's services, nursing and hospital expense, and in the case of both women and men, such person, or the appropriate administrator, may recover the value of services and support as spouse or parent or both, as the case may be, in such sum as the jury deems proper; provided, however, recovery for these elements of damage may not be had by the spouse and children, as such, of any person who, or whose administrator, is entitled to recover same. As amended Acts 1965 (61 G.A.) ch. 427, §§ 1, 2.

633.336 * * *

When a wrongful act produces death, damages recovered therefor shall be disposed of as personal property belonging to the estate of the deceased, but if the deceased leaves a spouse, child, or parent, it shall not be liable for the payment of debts of the estate, except debts and charges of the first, second, third and fifth classes.

Defendant Boeing filed an answer to the complaint on August 4, 1966, which denied the material allegations of the complaint and denied that Japanese law was applicable.

On February 2, 1967, a motion for summary judgment was filed against defendants which presented evidence tending to show the negligence of defendants.

Sometime prior to March 10, 1967, defendants offered the executors of the decedents' estates $541,000 to compromise the wrongful-death claims. The defendants also required that the executors obtain permission of the Polk County District Court to enter into the settlement and that the executors obtain releases from not only the two children of the decedents but also from the four parents of the decedents. On March 10, 1967, the executors requested and obtained the permission of the Polk County District Court to settle the wrongful-death claims and to pay amounts necessary to obtain releases from the decedents' children and parents and to pay attorneys' fees.

On March 14, 1967, the Cook County Circuit Court dismissed the wrongful-death actions with prejudice by stipulation of the parties.

Respondent determined that $334,666.67 of the settlement proceeds were includable in the gross estates of the decedents. The parties have agreed that if the settlement proceeds are subject to the estate tax at all, two-thirds thereof are includable in the gross estate of Howard C.

Maxwell and one-third thereof in the gross estate of Betty J. Maxwell. The amount of $334,666.67 subject to inclusion is computed in the following manner:

| | | |
|---|---:|---:|
| Settlement proceeds | | $541,000.00 |
| Less: | | |
| Attorneys' fees | $180,333.33 | |
| Attorneys' expenses | 4,000.00 | |
| Release from Charlene Maxwell | 10,000.00 | |
| Release from JoRita Maxwell Gorman | 10,000.00 | |
| Release from Lawrence and Ethel Fay Maxwell | 1,000.00 | |
| Release from Weldy and Velma Black | 1,000.00 | 206,333.33 |
| | | 334,666.67 |

The executors brought suit against BOAC and Boeing in Illinois rather than Iowa for a number of reasons. First, neither defendant was licensed to do business in Iowa nor maintained an office or employees in that State. Although some travel agents sold tickets for BOAC in Iowa, Ross H. Sidney did not feel that the Iowa courts could exercise personal jurisdiction over both defendants. Second, service could be had against both defendants in Illinois. Third, and perhaps more importantly, the executors could employ a well-known attorney as counsel if they brought suit in Illinois. This attorney was recognized for his ability and experience in representing parties in suits against airlines and airplane manufacturers, was already representing other plaintiffs in suits pending in the Cook County Circuit Court against BOAC and Boeing involving the same airplane crash, and his investigation of the facts of the accident through the filing of motions and applications with the court was already underway.

Section 2033 provides the following: "The value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death."

The dispute in this case under section 2033 turns upon whether the decedents had at the time of their deaths a claim against BOAC and Boeing on account of the airplane crash which passed to their estates. If they would have recovered in the Illinois suit under the law of a jurisdiction having a so-called Lord Campbell death statute, the decedents would not have had such an interest in the crash claim. This result obtains because the Lord Campbell type statute creates a new cause of action in certain relatives and dependents of a decedent at the time of his wrongful death. Accordingly, the decedent never has any interest in the claim which arises on account of his death, and section 2033 does not reach this claim even if his executors maintain the wrongful-death action. See Rev. Rul. 54-19, 1954-1 C.B. 179. Articles 709, 710, and 711 of the Civil Code of Japan are the equivalent

of a Lord Campbell type death statute. On the other hand, it has been held that if the cause of action vests in the decedent, even though death be instantaneous, his interest passes to his estate and is taxable under section 2033. *Connecticut Bank & Trust Co.* v. *United States*, 330 F. Supp. 997 (D. Conn. 1971). Sections 611.20, 611.22, and 633.336 of the Iowa Code create a cause of action in the decedent for his death which survives his death. *Wendelin* v. *Russell*, 259 Iowa 1152, 147 N.W. 2d 188 (1966); *Bixby* v. *Sioux City*, 184 Iowa 89, 164 N.W. 641 (1917).

The real question before us then is what law would the Cook County Circuit Court have applied if the wrongful-death actions had proceeded to trial and judgment. See *Klaxon Co.* v. *Stentor Co.*, 313 U.S. 487 (1941). Although choice-of-law problems are never solved easily, the correct choice in this case is made even more difficult because Illinois law appears to have been in a state of change at about the time the Maxwell suits were filed.

Prior to 1966, Illinois courts uniformly applied the *lex loci delicti* (law of the place of the tort) rule in resolving choice-of-law questions. *Mithen* v. *Jeffery*, 259 Ill. 372, 102 N.E. 778 (1913); *Nelson* v. *Union Wire Rope Corporation*, 31 Ill. 2d 69, 199 N.E. 2d 769 (1964); and *Rubitsky* v. *Russo's Derby, Inc.*, 70 Ill. App. 2d 482, 216 N.E. 2d 680 (1966). However, in 1966 the Supreme Court of Illinois appeared to depart from the strict application of the *lex loci delicti* rule in *Wartell* v. *Formusa*, 34 Ill. 2d 57, 213 N.E. 2d 544 (1966). In this case Wartell was driving with his wife in an automobile in Florida and became involved in an accident which caused his own death and injury to Mrs. Wartell. Mrs. Wartell brought suit against the estate of her husband in Illinois which was the domicile State of both husband and wife. The Supreme Court of Illinois, in holding that Mrs. Wartell's action was barred by the Illinois interspousal immunity statute, stated the following:

The law of the place of the wrong should of course determine whether or not a tort has in fact been committed, but the distinct question of whether one spouse can maintain an action in tort against the other spouse is clearly a matter which should be governed by the law of the domicile of the persons involved. Here the domicile is Illinois. Illinois has the predominant interest in the preservation of the husband-wife relationship of its citizens, and to apply the laws of Florida to the question of whether interspousal tort suits may be permitted between Illinois residents would be illogical and without a sound basis. * * * [213 N.E. 2d at 545–546.]

Although *Wartell* v. *Formusa, supra*, represented a departure from Illinois' former choice-of-law rule, it does not offer, in our opinion, a very significant one. First, there was only a "false conflict" between the law of Florida and the law of Illinois regarding suits between spouses because Florida's common law did not permit interspousal tort

actions. The only reason that the Illinois Supreme Court made any choice between the essentially identical laws of Illinois and Florida was to avoid ruling on the constitutionality of the law of Florida. The plaintiff had claimed that the proscriptions in both States of suits between spouses were unconstitutional. Accordingly, the Illinois court deviated from the *lex loci delicti* rule in order to be able to pass upon the constitutionality of its own law. Second, assuming that there was a conflict of law, *Wartell* v. *Formusa* did not purport to apply the law of the jurisdiction with the most significant contacts with the parties to the action; it merely stated that a statutorily announced policy of the State of domicile would be violated by permitting Mrs. Wartell to maintain an action against the estate of her husband. At the broadest, we believe that *Wartell* v. *Formusa* stands for the proposition that the Illinois courts would have applied the law of the jurisdiction where the injury occurred unless application of that law would contravene some expressed policy of another jurisdiction having a substantial interest in the matter.

We acknowledge that our reading of *Wartell* v. *Formusa* does not comport with that of *Manos* v. *Trans World Airlines, Inc.*, 295 F. Supp. 1170 (N.D. Ill. 1969). In *Manos* several plaintiffs who were either the estates or relatives of persons killed in an airplane crash in Italy and who resided in several States and countries brought wrongful-death actions against the airline and airplane manufacturer in Federal District Court in Illinois. Although the court in *Manos* realized at one point that *Wartell* v. *Formusa* provided only a limited exception to the *lex loci delicti* rule and indeed applied this rule in holding that the actions were not barred by any Italian statute of limitation, it nevertheless made the following statement:

The place of injury in these cases is Italy. The predominant interests to be served on the issue of damages are those of the states containing the people or estates which will receive the recoverable damages, if any, for their injuries or their decedent's death. * * * Italy has little or no interest in having its law applied, since none of the persons entitled to damages are citizens of, or live or reside in Italy. * * * the place of the crash was a mere fortuity in relation to the true interests presently to be served. * * * Italian law, therefore, will not apply in any of these twelve cases. [295 F. Supp. at 1173.]

We understand the considerations mentioned above by the District Court in *Manos* to represent the more modern and preferable trend in choice-of-law rules; however, we do not find any basis for them in *Wartell* v. *Formusa* or any other decision of the Illinois Supreme Court prior to 1970.

In *Ingersoll* v. *Klein*, 46 Ill. 2d 42, 262 N.E. 2d 593 (1970), the Supreme Court of Illinois abandoned the *lex loci delicti* in favor of a "most significant contacts" rule. This rule as stated in section 145,

Restatement, Second, Conflicts of Laws, is set forth in the margin.[2] Under the most-significant-contacts rule factors like the domicile of interested parties and of the decedent rather than the place of injury determine the law to be used in a particular case. Had *Ingersoll* v. *Klein* stated the choice-of-law rule to be applied in 1966, we believe that the recovery in this case would have been under Iowa law; however, the Supreme Court of Illinois indicated that the most-significant-contacts rule of *Ingersoll* v. *Klein* was to be applied prospectively only:

> We are aware that the views expressed herein may create hardship in other cases filed in reliance upon the doctrine of *lex loci delicti*. In such cases where hardship would result, the rules expressed herein shall not apply. See: Molitor v. Kaneland Community Unit Dist., 18 Ill. 2d 11, 27, 163 N.E. 2d 89 and cases cited therein. [262 N.E. 2d at 597.]

The prospectivity of *Ingersoll* v. *Klein* underscores the limited nature of the exception from the *lex loci delicti* rule that obtained in *Wartell* v. *Formusa*. Accordingly, we believe that the courts of Illinois would have applied the law of Japan to the Maxwell cases unless application of Japanese law would have contravened some express policy of Iowa. Upon examination of the Iowa statutes and of the record of this case, we do not believe that any policy of Iowa would have been thwarted by recovery under Japanese law. Therefore, we hold that the settlement proceeds in the Maxwell cases were made under Japanese law which vested the rights to them in the dependents of the decedents and not in the decedents themselves or their estates and that section 2033 does not require inclusion of the settlement proceeds in the gross estates of the decedents.

Respondent has made an alternative argument under section 2041 (a). In respondent's view, the decedents were able to direct distribution of the settlement proceeds through their will and this ability amounted to a power of appointment. Assuming that the settlement proceeds were appointed by the wills of the decedents, we fail to see how their power amounted to more than a special power of appointment. Under the law which governed the wrongful-death action the

---

[2] Sec. 145. The General Principle

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

right to recover belonged to the decedents' dependents and not to the decedents. The decedents at the time of their death had no right to appoint the property to themselves or to their estates. Accordingly, the decedents could not have had a general power of appointment as defined by section 2041(b)(1), and section 2041(a) could not by its terms apply.

We realize that there is a great deal of fortuity involved in a case like the present one. If the wrongful-death action had been brought in another jurisdiction or if the injury had occurred in another place, the result here may well have been different. Although there is a great temptation to try to eliminate this fortuity, the structure of the estate tax law in general and of section 2033 in particular requires that we trace property interests as they are defined by State law. Congress has dealt quite specifically with other types of death benefits, but it has left the taxation of the proceeds of wrongful-death suits to happenstance and the vagaries of local law.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*