(No. 26491.—

ST. CLAIR HOUSING AUTHORITY, Appellant, *vs.* THERESA QUIRIN *et al.* Appellees.

*Opinion filed January 22, 1942.*

H. GRADY VIEN, (JAMES J. HICKEY, of counsel,) for appellant.

LOUIS P. ZERWECK, State's Attorney, BEASLEY & ZULLEY, WHITNEL, BROWNING, LISTEMAN & WALKER, JOHN J. DRISCOLL, JOHNSON & JOHNSON, and McGLYNN & McGLYNN, for appellees.

Mr. JUSTICE SHAW delivered the opinion of the court:

The appellant in this case is a municipal corporation organized pursuant to statutory authority and for statutory purposes to provide low-rent housing, pursuant to authority of an act of the legislature known as the Housing Authorities act, as passed in 1934 and amended in 1937. (Ill. Rev. Stat. 1941, chap. 67½.) The State Housing Board mentioned in that act was created by amendment to the General Corporation act, approved March 19, 1934. (Ill. Rev. Stat. 1941, chap. 32, par. 520.) The appellant corporation exercises the power of eminent domain and has broad powers as to the issuance of bonds and agreements with Federal agencies, but is subject in many respects to the power of the State Housing Board. (Ill. Rev. Stat. 1941, chap. 67½, secs. 9, 11, 12, 13 and 14.) In the exercise of its statutory corporate powers the appellant brought a condemnation suit in the county court of St. Clair county for the purpose of acquiring title to a large number of parcels of real estate necessary for its project, and the present controversy arises from a jury trial for the purpose of fixing and determining the value and amount to be paid to various owners who were respondents in the eminent domain action for condemnation of their properties.

While a number of reasons for reversal are assigned arising out of this trial, it will only be necessary to consider one of them, and that one concerns the *voir dire* examination of jurors and remarks of counsel in connection therewith. It is to be noted at once that all questions of law as to the necessity for the condemnation, the propriety and power of the appellant to proceed, etc., had

been previously settled by rulings of the court without a jury and none of those questions are here called in issue, nor were they questioned in the trial court.

The respondents in the condemnation proceeding were represented by six different attorneys and firms of attorneys, and several of them, over objection of appellant, were permitted to question the jurors on their *voir dire* examination as to whether or not the fact that the United States Government was interested in the project and as to whether or not the fact that it would not cost the taxpayers of East St. Louis anything, would influence them in their verdict. Several different questions by several different counsel conveyed the information to the jury that the United States Government was interested in the project, or was financing it, or that it would not cost the taxpayers anything. Due objections were made to all of these questions and overruled by the trial court.

The appellees seek to justify these questions and remarks on the ground that there was an allegation in the petition as to the project, "which is, or are, or is to be, or are to be financed, in whole or in part, by the Federal Government." They say in their brief that this allegation showed that the Federal Government was interested in the project and that therefore it was not only proper but a duty for the attorneys to ascertain from the prospective jurors whether or not the fact that the Federal Government was interested in the proposition would "in any way influence their verdict." They also rely upon certain language in *Smithers* v. *Henriquez,* 368 Ill. 588, which involved questioning jurors as to their interest in a certain insurance company.

It is not necessary to enter upon any extensive discussion of the *Smithers case* because it is not in point and furthermore because it has recently been discussed and sharply limited in the case of *Edwards* v. *Hill-Thomas Lime & Cement Co.* 378 Ill. 180. In that case the court

permitted the question: "Do you own any stock, or is any member of your family employed by the Massachusetts Bonding & Insurance Company," and other similar questions. In the opinion in that case we said: "No affidavit was filed by counsel for appellee, and no showing was made giving any reason why it was necessary to ask the questions proposed. The record indicates that he simply made the request, orally, before the judge in chambers. The only reasons given were that the insurance company was conducting the defense and was liable for any judgment that might be rendered against the defendant, and that he desired to ask the questions for the purpose of exercising his right to challenge, if any members of the jury had any financial interest in the insurance company, or if their close relatives had any such interest.

"While there is nothing in the record to show the request was not made in good faith, the record is equally barren of any fact which tends to show that it was so made. The grounds stated by counsel as reasons for asking the questions were wholly insufficient. Likewise, the facts stated by counsel for appellant, under oath, for the purpose of obviating the supposed necessity for the questions, were insufficient for that purpose, if the grounds upon which the request was made had been sufficient.

"Prior to the decision of this court in *Smithers* v. *Henriquez,* 368 Ill. 588, the question of the right to bring the name of a defending insurance company into cases in this manner was the subject of much controversy. In that case the question was fully considered. It was held that where some grounds were shown upon which to base a reasonable belief that it was necessary to interrogate jurors as to their financial interest, if any, in the defending insurance company, and where the application to do so was made in good faith, such practice would not alone constitute reversible error, particularly where it was reasonably apparent from the record that the amount of the

verdict had not been influenced thereby. While the record in this case does not show that the request for leave to ask the questions in the examination of the jurors was not made in good faith, there was no basis shown upon which the request could reasonably be granted by the trial court. It is apparent under the showing made in this case that the real purpose which counsel had in mind was to advise the jury that the insurance company was making the defense and was liable for the payment of any judgment rendered. * * * The responsibility is upon the trial court to see that this practice is not abused and only permitted in cases where the request is made, upon a showing of proper grounds and within the rules announced by this court. In this case, as we have already pointed out, there was a sharp conflict in the evidence on the question of liability. While the amount of damages awarded by the jury might be sustained upon the evidence so that it could not be said that the damages awarded were excessive, we cannot say that the jury was not improperly influenced on the question of liability." Appellees cite no other case on this point which even remotely approaches an approval of the questions asked and the remarks made.

Referring back to the argument of appellees that the questions were competent because the petition for condemnation had alleged that the project contemplated was to be financed in whole or in part by the United States Government, several answers are to be made. In the first place, the allegation in the petition was mere surplusage because the appellant had full power of condemnation no matter who the money was borrowed from, and it had power to borrow from any one, under numerous forms of financing, including the Federal Government, but not excluding other lenders. The jury in a condemnation suit is called only for the purpose of finding values and fixing damages. (*O'Hare* v. *Chicago, Madison and Northern*

*Railroad* Co. 139 Ill. 151; *Department of Public Works and Buildings* v. *Sohm,* 315 id. 478; *Sanitary District of Rockford* v. *Johnson,* 343 id. 11.) The narrow issue thus submitted to a jury cannot be broadened nor the verdict of the jury influenced by the interjection of immaterial matters, especially matters calculated to be prejudicial. Whether or not the project is necessary or advisable, or the necessity for taking the property, or whether more property is taken than necessary, and whether or not it is ever paid for or who pays the judgment, are not questions for the jury to consider, nor to be brought before it in any way. It is of course true that an attorney on *voir dire* examination of jurors has a right to make such reasonable inquiry as will permit him intelligently to exercise his right of peremptory challenge, but the right goes no further. (*Aetitus* v. *Spring Valley Coal Co.* 246 Ill. 32.) It is also urged that the extent of the examination and its nature is entirely within the discretion of the trial court, but this is not true. Such discretion as the trial court has is a judicial discretion subject to review and if abused may bring about a reversal. (*Mithen* v. *Jeffery,* 259 Ill. 372.) It is further urged that because the verdicts are within the range of the evidence they should not be disturbed. This is frequently held to be the law, but it is only true when applicable to the case under consideration, and each case must stand by itself so far as this particular point is concerned. Thus in *Sanitary District* v. *Johnson, supra,* the rule was stated but qualified by a further statement "unless there appears to have been a clear and palpable mistake, or the verdict was the result of passion and prejudice." The rule was invoked in *Eldorado Coal and Coke Co.* v. *Swan,* 227 Ill. 586, where counsel attempted to get immaterial and prejudicial matter before the jury and in that case it was applied. In applying it, however, this court used the fol-

lowing language: "The conduct of counsel in thus seeking to place before the jury matters not involved in the issue is censurable in the highest degree, and if the amount of the verdict were such as to raise a suspicion in our minds that the jury had been influenced by this misconduct, or if the case were a close one on the facts, we would not hesitate to reverse the judgment for this reason alone. But since the verdict was rather below the usual amount awarded where the injury has been sustained such as the evidence shows here, and the case is reasonably clear on the facts, there is no reason to suspect that the jury were actuated by prejudice or passion." On the other hand, in the case of *McCarthy* v. *Spring Valley Coal Co.* 232 Ill. 473, the judgment was reversed and the cause remanded for this kind of conduct. In that case the plaintiff improperly interjected into the record statements that he had a wife and five children and intimations that the insurance company would have to pay the judgment. We there held that it was impossible to tell the effect on the jury's mind created by the wrongful conduct of counsel.

In the case we are now considering there could have been no proper motive nor any reasonable excuse for placing before this jury the alleged fact that the Federal Government was paying for the property. In the first place, there is nothing in the record to show it was true; in the second place, it was entirely immaterial and any evidence as to its truth or falsity would have been inadmissible and in the third place it could not help but have been most highly prejudicial to the appellant, and in view of its untruth and obvious immateriality it must have been willfully and intentionally prejudicial. The same objections apply to the questions and remarks as to the taxpayers of East St. Louis informing them that their verdict would not impose any taxes upon them. Appellees

having intentionally asked these questions, which amounted to an invitation to the jury that it might as well be liberal with the money of the richest nation in the world, are in no .position to offer any excuse whatever for the error which they deliberately caused. To temporize with or to condone such conduct as this would constitute a standing invitation for every lawyer who saw fit to do so to go just as far as he could and take a chance on going just a little bit further in getting immaterial and prejudicial matter before a jury. This court recognizes what every trial lawyer knows, *i.e.*, that it is highly prejudicial to a defendant for a jury to be improperly informed that the defendant is really a very wealthy person or that some wealthy corporation would have to pay the verdict rather than the defendant, and thus invite them to be liberal with some-one-else's money. As we said in *McCarthy* v. *Spring Valley Coal Co. supra,* we have no way of telling what effect this improper conduct had upon the minds of the jurors and there is no means at our command to be sure of stopping this improper and unethical conduct except by reversing judgments so obtained. The rules as to the limits to which counsel may go on the *voir dire* examination of jurors have been frequently stated by this court and those who seek to venture beyond them must do so at the risk of a reversal of any judgment so obtained.

No objections were made as to instructions, and other errors assigned are not likely to recur on a new trial. For the reasons above indicated, the judgment of the county court of St. Clair county will be reversed and the cause remanded to that court for a new trial.

*Reversed and remanded.*