(No. 26429.—)
EUGENE KAVANAUGH, Appellee, *vs.* JEANNE PARRET, Appellant.

*Opinion filed March 16, 1942.*

274

Farthing and Wilson, JJ., dissenting.

Sears, O'Brien & Streit, (Barnabas F. Sears, and William M. Garvey, of counsel,) for appellant.

Ray F. Faulkner, and Charles M. Robson, for appellee.

Mr. Justice Stone delivered the opinion of the court:

This is an appeal on leave granted to review a judgment of the Appellate Court for the Second District affirming a judgment of the circuit court of Will county against appellant in the sum of $4500, arising out of a collision be-

tween a bicycle ridden by appellee and an automobile driven by appellant. The accident occurred in the afternoon of August 2, 1937, on a paved road in Will county. The point at which the accident occurred is comparatively level and visibility up and down the highway was unhindered for more than a mile. It was a clear day. The appellee, then a boy of sixteen years, and his companion Robert Bagnell, seventeen years of age, were riding south on their bicycles. Bagnell was near the west side of the pavement and appellee was near the center line. Appellant was driving her automobile south.

The evidence as to the collision is in sharp dispute. That of appellee tended to show that the appellant approached at a great rate of speed and did not sound her horn until she was very close to them, causing appellee to swerve to the east to avoid hitting his companion. Appellant's evidence tends to show on the other hand that she sounded her horn intermittently for a distance of nearly a half mile as she approached the boys; that she slackened her speed and when she turned into the east traffic lane to pass the bicycles, appellee swerved into that lane and was struck, and that in her effort to avoid striking him she swerved her car so far to the east that the left wheels of her car were off the pavement at the time appellee was struck. Her evidence also was that Bagnell with his bicycle left the pavement on the right side thereof when appellant came within one hundred yards of the two boys.

Errors assigned are in permitting a certain question to be asked of the jurors on *voir dire* and the giving of certain instructions. It appears that at the commencement of the trial appellee's counsel filed with the judge in chambers, out of the presence of the jury, an affidavit stating upon information and belief, and as a result of his investigation of the case, that appellant was insured in the Union Auto Indemnity Association of Bloomington, Illinois; that that company was a reciprocal and not a stock company

and that appellant was being defended by attorneys selected by the company and not those of her own choosing. The affidavit also stated that the company had agents, representatives, solicitors, investigators and numerous policyholders in Will county and was vitally interested in the defense. The affidavit further stated that the question sought to be asked was to prevent appellee's rights being prejudiced in the selection of the jury.

A counter-affidavit was filed by the secretary and executive manager of the insurance company setting forth that the company is not a mutual company but issued all its policies at a stipulated premium not subject to assessment, and that an examination of the records of the company disclosed that none of the jurors, naming them, were policyholders, stockholders, agents, employees or in any way or manner interested financially or otherwise in the affairs of the insurance company. In addition to this the general counsel for the company testified to like effect before the court in chambers. The court granted the motion of appellee's counsel to ask the jurors the proposed question, and they were asked collectively as follows: "Are you, or any of you ladies and gentlemen agents, employees, representatives, solicitors, or policyholders of or are you, or any of you interested financially, or otherwise, in the Union Auto Indemnity Association of Bloomington, Illinois?" The jurors were told to raise their right hand if their answer was in the affirmative but none so indicated.

The question of law raised on this assignment of error has heretofore been considered by this court. Its most recent pronouncement is found in the case of *Edwards* v. *Hill-Thomas Lime & Cement Co.* 378 Ill. 180, where it was held error to allow such a question to be asked the jurors in the absence of sufficient showing of good faith and of reasons for making it. The only material distinction between this case and the *Edwards case* lies in the fact that here the request was made under oath, while in

the *Edwards case* it was an oral motion. Such fact does not distinguish the cases. Nor is the affidavit more indicative of good faith. It is based on information and belief and states that the question was proposed in order that plaintiff's rights be not prejudiced in the selection of the jury. It is of course counsel's duty to protect his client against prejudice by the reasonable ascertainment of such information as would permit him to intelligently exercise his right of peremptory challenge, but the right goes no further. (*St. Clair Housing Authority* v. *Quirin*, 379 Ill. 52; *Aetitus* v. *Spring Valley Coal Co.* 246 id. 32.) Here that information was given him under oath, subjecting the informant to perjury if false. The counter-affidavit and sworn testimony offered in chambers were positive and tended to show that the plaintiff's rights could not, in the manner suggested, be prejudiced in a trial of the case before the panel of jurors then in court. The only effect of the question was to advise the jury that the insurance company was making the defense and was liable for the payment of any judgment rendered.

As announced in *Mithen* v. *Jeffery*, 259 Ill. 372, *Smithers* v. *Henriquez*, 368 id. 588, and the *Edwards case, supra,* it is improper to inform the jury, either directly or indirectly, that the defendant is insured against liability on a judgment that may be entered against him in the trial of the case. In the last cited case it was found unnecessary to decide whether such error required reversal of the judgment, since other errors so requiring had intervened. In this case it is clear from the record that the question put not only was not necessary to plaintiff's right to a fair trial but could serve only to prejudice the defendant. It is a matter of common knowledge that ofttimes casualty insurance policies cover only a portion of the liability arising on a judgment entered against the insured. Whether the defendant has someone to help him pay a judgment, if one is rendered against him, has nothing to do with the

case on trial, and to bring it into the lawsuit is to import an influence having nothing to do with the merits of the case and designed only to aid the plaintiff at the expense of the defendant. It would be no more unfair to show that plaintiff is insured, either by contract with his attorney, or otherwise, against the payment of any costs or attorney's fees, in case he loses. Neither makes for a fair and just trial of the lawsuit and neither should be permitted.

As indicated in *Mithen* v. *Jeffery, supra,* counsel for plaintiff is permitted to make such inquiries as will prevent prejudice to his client, but the weight of the proof before the judge in chambers showed the question proposed wholly unnecessary to protect plaintiff's rights. That it was prejudicial to the defendant to put the question, seems clear. The proposal to so question the jury and the affidavits and evidence adduced thereon, were all before the court in chambers, and while the trial judge was to determine therefrom whether to permit or deny the question, the discretion in the trial court so to do is not an arbitrary but a judicial discretion, subject to review. (*Mithen* v. *Jeffery, supra.*) Considering the entire proceeding before the trial judge in chambers, it cannot be said that it established the good faith required under the rule announced, and it was an abuse of discretion to permit the question.

Appellant also complains of certain instructions given on behalf of the plaintiff. No. 10 told the jury "as a matter of law that if a person without fault on his part is confronted with sudden danger or apparent sudden danger, the obligation resting upon him to exercise ordinary care for his own safety, does not require him to act with the same deliberation or foresight which might be required under ordinary circumstances." It is objected that the instruction presents an abstract proposition of law and assumes that appellee was confronted with a sudden danger

or apparent sudden danger and that it leaves the jury uninformed as to the degree of care the appellee should have exercised.

Counsel for appellee argue that while this instruction has been held erroneous in other cases, it was not so under the ·facts in the case before us; that appellant's counsel tried her case on the theory that she was confronted with a sudden emergency and the jury could apply the instruction equally well to both parties. There is nothing either in the record or in the instruction itself to indicate that it was to be so applied. The instruction was tendered by the appellee and was worded in language applicable only to him. We are unable to say that the facts in this case render the instruction improper, although abstract in form. Plaintiff was entitled to have the jury instructed as to his theory of the case.

Instruction No. 12 complained of by appellant, dealt with damages and it is argued that it did not confine the jury to damages claimed in the complaint and did not require that the alleged injuries be the proximate result of the negligence of the defendant and that it also permitted recovery for future consequences upon conjecture. The instruction told the jury that in assessing plaintiff's damages if they found him entitled to recover, they might take into consideration his health and physical·condition since that time, if they believed from the evidence that his health and physical condition since then were impaired as a result of the injury. They were told they might consider whether he was permanently injured and to what extent, the necessary expense he had been put to and the effect upon him in the future with reference to pain and suffering.

Other instructions told the jury that the plaintiff must prove by preponderance of the evidence that he was injured; that he had exercised reasonable care for his own safety and that the defendant was negligent. These were all made necessary to a finding for him. It was not essen-

tial that all these elements be again incorporated in the instruction dealing with the assessment of damages. The uncontroverted medical testimony offered by the plaintiff showed that he was permanently injured. The instruction clearly states the law, (*Illinois Central Railroad Co.* v. *Cole,* 165 Ill. 334,) and the objection to it cannot be sustained.

Because of errors in permitting the proposed question on the examination of the jury on their *voir dire,* the judgment of the Appellate Court is reversed and the cause remanded to the circuit court of Will county for a new trial.

*Reversed and remanded.*

Mr. JUSTICE FARTHING, dissenting:

I cannot agree with this opinion. It states: "It appears that at the commencement of the trial appellee's counsel filed with the judge in chambers, out of the presence of the jury, an affidavit stating upon information and belief, and as a result of his investigation of the case, that appellant was insured in the Union Auto Indemnity Association of Bloomington, Illinois; that that company is a reciprocal and not a stock company and that appellant was being defended by attorneys selected by the company and not those of her own choosing. The affidavit also stated that the company had agents, representatives, solicitors, investigators and numerous policyholders in Will county, and was vitally interested in the defense. The affidavit further stated that the question sought to be asked was to prevent appellee's rights being prejudiced in the selection of the jury."

Then follows a paragraph dealing with a counter-affidavit and testimony about the jury list, to the effect no prospective juror was interested in the insurance company that had been named.

Beginning at page 590 in *Smithers* v. *Henriquez,* 368 Ill. 588, we discussed the affidavit made in that case and

the correctness of the court's ruling that plaintiff had a right to ask whether any of the jurors had any interest in the insurance company there involved. In the two cases the proceedings and circumstances are as nearly identical as can be. For example, at page 591 in the *Smithers case* this appears: "It is urged that the plaintiff's affidavit did not allege that she believed or had any ground to believe that any of the jurors were financially interested in the defending insurance company, and that after propounding the question counsel made no effort to obtain an answer." On that same page this appears: "In any case, to say that as a basis for such an inquiry, litigants must, before the trial, examine the jury lists and investigate and determine the qualifications of prospective jurors, would impose an onerous and unreasonable task upon them, and, in effect, nullify the statutory provision and time-honored custom of examining jurors upon the trial. The affidavit made a sufficient showing to warrant the granting of a proper inquiry."

In *Edwards* v. *Hill-Thomas Lime & Cement Co.* 378 Ill. 180, no affidavit was presented, only an oral motion. At page 185 appears the statement: "While there is nothing in the record to show the request was not made in good faith, the record is equally barren of any fact which tends to show that it was so made. The grounds stated by counsel as reasons for asking the questions were wholly insufficient. Likewise, the facts stated by counsel for appellant, under oath, for the purpose of obviating the supposed necessity for the questions, were insufficient for that purpose, if the grounds upon which the request was made had been sufficient." And at page 187: "In this case because of other errors in the record, it is not necessary for us to determine whether this error, alone, would be sufficient to require us to reverse the judgment. We have set out somewhat in detail the facts surrounding the examination of the jurors

and we disapprove the practice followed and admonish trial courts that such an examination of jurors should only be permitted, strictly for the purposes, and upon a proper showing, as pointed out in the decisions of this court."

In the instant case appears the statement: "The only material distinction between this case and the *Edwards case* lies in the fact that here the request was made under oath, while in the *Edwards case* it was an oral motion."

This is not correct. I have attempted to set out those material parts of the *Smithers case* and the *Edwards case* to show that the case here before us is almost an exact parallel to the *Smithers case*. This court did not intend by the Edwards decision to overrule the Smithers decision but that is the effect of this opinion. Two things will follow, and perhaps more, that are highly undesirable. The first is, that plaintiff's counsel will be compelled to search out prospective jurors and learn whether they are interested in the defending insurance company, financially or through employment. If this is done, insurance company lawyers will complain bitterly.

The other thing is that there are counties which have mutual insurance companies operating in them. These companies have a large number of policyholders and at times it has been impossible to get a fair jury in any automobile collision case because there were so many of such policyholders on the jury panel.

I am not in favor of denying a right to a litigant to learn whether prospective jurors will be fair jurors if accepted where he seeks that right as he did here and as was done in the *Smithers case* with fairness to the defendant.

Mr. JUSTICE WILSON, also dissenting.