Rex HAWBAKER, as Administrator with the Will Annexed of the Estate of Stanley Edward Finnegan, deceased, et al., Plaintiff-Appellee,

v.

Linda DANNER, Defendant-Appellant.

No. 11326.

United States Court of Appeals Seventh Circuit.

Nov. 3, 1955.

Frederick H. Stone, Louis F. Gillespie, George B. Gillespie, Springfield, Ill., for defendant-appellant, Linda Danner (Gillespie, Burke & Gillespie, Springfield, Ill., of counsel).

Henry R. Barber, Alton G. Hall, Roger H. Little, Springfield, Ill., for plaintiff-appellee.

Before MAJOR and FINNEGAN, Circuit Judges, and PLATT, District Judge.

PLATT, District Judge.

Plaintiff, Rex Hawbaker as Administrator of the Estate of Stanley Edward Finnegan, Patricia Givens Finnegan and Marion Patricia Finnegan, and as next friend of Stanley Garrett Finnegan, brought this action to recover for wrongful death,[1] and for personal injuries sustained by Stanley Garrett Finnegan against Linda Danner, James Brock, and Valley Distributing Company, an Illinois Corporation. The district court directed a verdict in favor of James Brock, and the jury returned a verdict against Linda Danner only, awarding $15,000.00 damages in the estate of Stanley Edward Finnegan and $10,000.00 in the estate of Patricia Givens Finnegan. The defendant, Linda Danner, filed a motion for new trial and for judgment notwithstanding the verdict. The motion was denied. She appeals only to obtain a new trial.

Linda Danner maintains that the district court erred in denying her motion for new trial for the following reasons:

1. The court improperly allowed testimony relating to the habits and due care of Stanley Edward Finnegan and Patricia Givens Finnegan.

2. The court erred in admitting in evidence the social security records stating the yearly earnings of Stanley Edward Finnegan and Patricia Givens Finnegan.

3. The court refused to give the following suggested instructions:

"You are charged that if you believe that the deaths and injuries complained of, if any, were the result of causes or circumstances over which the defendant, Linda Danner, had no control and could not prevent, then you should find her not guilty.

"You are charged that it is not every accident which makes an operator of an automobile liable for damages for an injury. If the accident is unavoidable so far as the operator of an automobile is concern-

---

1. Ill.Rev.Stats.1953, Ch. 70, Sec. 2.

ed, then no liability is incurred by him, whether as a result of it a person is lightly or seriously injured, or killed, and if in this case you believe from all of the evidence and under the instructions of this court that so far as the defendant, Linda Danner, is concerned the injuries and deaths complained of were unavoidable, then you should find her not guilty."

The facts in this case disclose that a motor vehicle collision occurred about 3:45 p. m., March 7, 1953, on U. S. Route 66, on Lake Springfield Bridge, south of Springfield, Illinois. This bridge was paved, 1800 feet in length, with two lanes for north bound traffic and two lanes for south bound traffic. The visibility was good but the surface of the bridge was covered with snow, ice, slush, water, and as a result was slippery. The defendant, Linda Danner, was driving her Ford automobile in a southerly direction, and with her were three other young ladies. As the Danner automobile approached the bridge it was followed by an automobile driven by Robert L. Allen, and riding with him was his wife Billie. Just before the defendant drove upon the bridge the Allen automobile was passed by the Valley Distributing Company's truck, which was being driven by George Friar, and riding with him was Ben Joslow. Linda Danner drove in the outer or westerly lane until she reached a point 100 to 200 feet onto the bridge, when she turned her car into the inner south bound lane. In doing so she encountered slush, her car skidded, and she lost control. Her car crossed into the north bound lanes and collided with a Pontiac automobile driven by James Brock. Her automobile continued skidding until it came to a halt against the east sidewalk of the bridge. Immediately following this collision, a Nash Station Wagon headed north and driven by Stanley Edward Finnegan, in which his wife Patricia, daughter Marion, and son Garrett were riding, crossed into the east south bound lane and collided with the Valley Distributing Company's truck. All of the occupants of the Finnegan vehicle except Garrett died as a result of injuries received in the collision. Patricia Finnegan died immediately but Stanley was taken to the hospital and lived two days. Billie Allen, a witness for the plaintiff, testified that just about the same instant that the Danner automobile hit the bridge rail she looked in front of her and saw the Nash or Finnegan vehicle collide with the truck. She did not see the Nash prior to the impact, nor did she know the speed of the Nash, or when it came into the south bound lane.

Over the objections of the defendant, the plaintiff was permitted to introduce into evidence the careful driving habits of the deceased Stanley Edward Finnegan, and the careful habits of Patricia Givens Finnegan. The defendant offered George Friar and Ben Joslow as eyewitnesses, but the plaintiff refused to accept them. George Friar testified for the defendant:

"Q. And, did you see a car coming north that was afterwards in collision with your truck?

"A. Well, oh, 35 or 40 feet, I seen one coming north, northwest."

On cross examination this witness admitted testifying before a coroner's inquest on March 12, 1953, that he saw the Nash automobile "a split second" before it struck his truck. Ben Joslow testified:

"Q. Had you seen a station wagon that was afterward in collision with your truck?

"A. Not until it was almost on us."

On cross examination he recalled testifying he saw the Finnegan automobile 10 or 15 feet before the collision; on redirect examination he testified:

"Q. Now, at the time that this Nash automobile shot around and came onto your side of the highway, what was it doing with reference to whether it was skidding, or what?

"A. What I can remember, it just shot out behind a car and came rath-

er fast, that is all I can remember, it hit us."

Rex Hawbaker testified on cross examination that while talking to Stanley Edward Finnegan in St. John's Hospital in Springfield Stanley said:

"Something about an accident being in front of him and he put on the brakes and skidded into the front of the truck."

The defendant emphasizes in brief and argument that the court erred in admitting evidence of the careful habits of Patricia Givens Finnegan, and her husband, Stanley Edward Finnegan.

"The rule is well settled in [Illinois] that when there is no eyewitness to an accident who is competent to testify to the facts which caused the accident in a wrongful death action, testimony of the habits and due care on the part of deceased is properly admissible in evidence."

Hann v. Brooks, 331 Ill.App. 535, 73 N.E.2d 624. The witnesses tendered by the defendant Danner were competent witnesses, since they were not parties to the suit. Hawthorne v. New York Cent. R. Co., 2 Ill.App.2d 338, 119 N.E.2d 516. In determining whether or not there was an eyewitness, such as to preclude the evidence in question, we should give careful attention to the obvious purpose of this rule of law. In Illinois the burden is upon the administrator to prove that the deceased was in the exercise of ordinary care to avoid the injury. Illinois Central R. Co. v. Nowicki, 148 Ill. 29, 35 N.E. 358. Where there is no direct evidence of due care he must resort to evidence of the deceased's careful habits to prove reasonable care. Morgan v. Rockford, B. & J. R. Co., 251 Ill.App. 127.

The general reputation of habits of due care of Patricia were admissible as tending to show she was in the exercise of due care on the occasion. Illinois Cent. R. Co. v. Prickett, 210 Ill. 140, 71 N.E. 435. While the negligence of

Stanley, if any, could not be imputed to Patricia[2] it was her duty,

"where [s]he has an opportunity to learn of danger and to avoid it, to warn the driver of such vehicle of approaching danger, and [s]he has no right, because someone else is driving, to omit reasonable and prudent efforts on [her] own part to avoid danger." Dee v. City of Peru, 343 Ill. 36, 42, 174 N.E. 901, 904.

There was no one who did or could testify as to whether Patricia said or did anything as she rode in the automobile. Her careful habits were the only evidence to affirmably prove reasonable care. See Morgan v. Rockford, B. & J. R. Co., supra.

This brings before us the proposition as to whether the careful driving habits of Stanley were admissible to prove that he was in the exercise of reasonable care for his own safety. Reasonble care means:

"'that he was required to exercise that degree of care which an ordinarily prudent person, situated as plaintiff was before and at the time of the accident, would have exercised for his or her own safety.'" Pierson v. Lyon & Healy, 243 Ill. 370, 90 N.E. 693, 696.

In the instant case the surface of the bridge was in a hazardous condition for driving. Stanley was faced with the collision of the Danner and Brock vehicles, while the Valley Distributing Company's truck and the Allen car were moving toward him in the south bound lanes. Stanley was confronted with an apparent sudden danger. If, without fault on his part, a person is suddenly confronted with what would appear to an ordinarily careful person to be danger, then he is not required to use the same degree of care which is required under ordinary circumstances, but in such a situation it is his duty to use that degree of care which would be used by an ordinarily careful person, taking

2. Pienta v. Chicago City R. Co., 284 Ill. 246, 120 N.E. 1.

such danger, if any, into consideration.[3] Kavanaugh v. Parret, 379 Ill. 273, 40 N.E.2d 500; Chicago Union Traction Co. v. Newmiller, 215 Ill. 383, 74 N.E. 410. There was no witness who testified as to the speed or manner in which Stanley was driving when he was suddenly confronted with apparent danger. The witness Friar saw the Finnegan vehicle at most a split second, 40 feet, just over two car lengths, before the collision with the truck. Joslow observed the Finnegan car just 15 feet before the impact. Billie Allen saw the truck and the Finnegan car at the time they collided. Stanley, in the hospital, stated that the accident was in front of him and he put on his brakes and skidded in front of the truck. There was no evidence submitted to the jury from which they could determine whether Stanley was confronted with sudden danger without fault on his part. The emergency rule is not effective unless he was in the exercise of due care. Sullivan v. Heyer, 300 Ill.App. 599, 603, 21 N.E.2d 776. The testimony of what Stanley did to escape injury was not proof that he was using reasonable care to avoid being placed in a position of danger. The careful driving habits were material. In Parthie v. Cummings and Green, as Receiver, d/b/a Chicago Surface Lines, 323 Ill.App. 296, 55 N.E.2d 402,[4] the pedestrian was struck by a streetcar and died as a result of the injuries received. Plaintiff was permitted, over the objections of the defendant, to introduce the careful and prudent habits of the deceased. The defendant tendered the motorman as an eyewitness.

"He testified that he did not see her leave the curb; that the southwest bound traffic of cattle trucks was heavy; that he was looking to the right and left and straight ahead and happened to see her as she came out from these trucks; that she was about 20 feet in front of him and about five feet north of the tracks;

that she was looking southwest and sort of trotting or running; * * * she did not change her course of direction but kept right on going ahead; the left hand corner of the car came in contact with her. * * * *"

The court after stating the general rule as to when habits of care are admissible as stated in Petro v. Hines, 299 Ill. 236, 132 N.E. 462, 18 A.L.R. 1106, said:

"In the present case the motorman saw the decedent for only the briefest instant before the street car struck her. At that time she had emerged from the traffic and was trotting or running, and the question of due care for her safety necessarily covered her conduct from the time she left the curb until she came within the view of the motorman. With this defendants agree. In their reply brief they say, * * * when speaking of decedent's position after emerging from the traffic and being confronted with the approaching street car, defendants say, 'Where one fails to use due care to avoid getting into a position of danger, recovery cannot be had even though such person may have used all due care in attempting to escape from such danger.' (Citing cases.) The question, of due care of decedent at a time when there were no eye witnesses, being material, the court did not err in receiving testimony as to habits or in refusing to strike it on motion."

In Noonan v. Maus, 197 Ill.App. 103 [5] (certiorari denied by Supreme Court making opinion final), the court reasoned:

"We are of the opinion that the question of due care on the part of appellee's intestate was in issue, not only at the time of the meeting of the team and automobile, but also down to the time he met his injury.

---

3. The district court so instructed the jury.

4. See footnote 5.

5. Parthie v. Cummings and Noonan v. Maus are reported as abstract opinions. The court has used the full opinion.

\* \* \* It, therefore, follows that there were no eye witnesses to the whole of this transaction, and in our opinion, that being the case, it was proper for the court to admit evidence of the careful habits of appellee's intestate for his own safety, and as to his skill and experience in the management of horses, as tending to prove due care on his part."

In both of these cases the Illinois Appellate Court clearly realized that the eyewitness rule should be given a practical construction to permit the proof of reasonable care during the whole transaction and particularly to the material moments thereof, depending upon the circumstances in each case. The court has carefully examined many of the authorities in the Supreme and Appellate Courts of Illinois involving the eyewitness rule, including the cases cited by the defendant, and has been unable to find any case where the administrator was denied the proof of careful habits in such a situation as we have in the instant case. In Iowa the rule has been more explicitly stated,

"[T]hat in order to be considered an eye-witness to a motor vehicle collision where one of the drivers is killed, the person testifying must at least have had the motor vehicle operated by the decedent under his observation at all material moments preceding and until the collision. What constitute material moments under the rule varies as to the condition and circumstances in a particular case." Van Wie v. United States, D.C., 77 F.Supp. 22, 41.

We believe that under the facts in this case that the district court did not err in permitting proof of the careful driving habits of Stanley Finnegan.

The defendant has stressed lightly the inadmissibility of the certified copies of the annual earnings of Stanley and Patricia, as shown by the records of the Social Security Administrator. The defendant's objection to the documents was that it was not the best evidence and was hearsay.[6] The admissibility of these documents must be approached with Rule 43, Fed.Rules Civ. Proc., 28 U.S.C.A., in mind.

"It is there provided that all evidence comes in if admissible under United States statutes \* \* \* or state law, whichever favors the reception of the evidence. \* \* \* [T]his is a rule of admissibility not exclusion." Wright v. Wilson, 3 Cir., 154 F.2d 616, 617, 170 A.L.R. 1237.

The first reason for the objection is not sound. Federal Security Agency, Title 42, Ch. 10, § 1601 provides in part:

"Copies of any \* \* \* records \* \* \* in the Federal Security Agency shall be admitted in evidence equally with the originals thereof when authenticated under such seal."

The Federal Evidence Act, U.S.C.A. Title 28, Ch. 115, § 1733 provides in part:

"Properly authenticated copies or transcripts of any books, records, \* \* \* of any department or agency of the United States shall be admitted in evidence equally with the originals thereof."

The hearsay objection was equally groundless. This was a public entry. The Social Security Administrator was required by statute in the discharge of his public duty to keep these records.[7] There was no reason for the public officer to improperly record or distort these wage records. The records were kept in the regular course of business of the

---

**6.** The defendant argues that the documents were self-serving since deceased was self-employed. "[I]n the federal courts \* \* \* an objection to the admission of evidence must state specific ground. \* \* \*" Johnston v. Reily, 82 U.S.

App.D.C. 6, 160 F.2d 249, 250; Maulding v. Louisville & N. R. Co., 7 Cir., 168 F.2d 880.

**7.** Title 42, Sec. 902—Duties of Administrator.

Social Security Agency.[8] Under such circumstances the records were an exception to the rule excluding hearsay and were admissible in evidence. Chesapeake & Delaware Canal Co. v. United States, 3 Cir., 240 F. 903, 907, affirmed 250 U.S. 123, 39 S.Ct. 407, 63 L.Ed. 889; Moran v. Pittsburgh-Des Moines Steel Co., 3 Cir., 183 F.2d 467, 473; Intermondale Trading Co. v. North River Ins. Co. of N. Y., D.C., 100 F.Supp. 128, 131; O'Brien v. United States, 8 Cir., 192 F. 2d 948, 950; People v. Dime Savings Bank, 350 Ill. 503, 183 N.E. 604.

 Defendant finally insists that there was error because the two suggested instructions were refused. It is argued that these instructions contained a vital theory of the defense, and that the defendant was entitled to have one of them given. The instructions are an attempt to inform the jury that if the death was the result of a pure accident, that is, one which occurred without negligence on the part of the defendant before or at the time of the occurrence then the jury should find the defendant not guilty. Crutchfield v. Meyer, 414 Ill. 210, 111 N.E.2d 142. Since the instructions were peremptory they should have contained all of the essential facts to justify a verdict. Andrews v. Hotel Sherman, 7 Cir., 138 F.2d 524, 530. Defendant's counsel admits that there was sufficient evidence of defendant's negligence to permit the jury to return the verdict. The instructions were framed upon the principle of proximate cause. The negligence of the defendant did not legally have to be the sole proximate cause, but on the contrary the slick surface of the bridge had to be the sole proximate cause to be a defense unless there was contributory negligence. An intervening cause to relieve liability must be new, self-operating, and independent of the negligence. Chapman v. Baltimore & O. R. Co., 340 Ill.App. 475, 92 N.E.2d 466. The first instruction is not limited to where the injuries were solely caused by the icy condition of the bridge. The second instruction fails to eliminate the defendant's negligence before the occurrence. The collision might have been unavoidable so far as the defendant, Linda Danner, was concerned after she started skidding upon the ice and yet she might have been negligent prior to that time. The district court is not bound to give an incorrect or confusing instruction. Baltimore & O. R. Co. v. Felgenhauer, 8 Cir., 168 F.2d 12, 19. The district court did not err in refusing these instructions.

We are of the view that the record discloses no reversible error.

The judgment appealed is

Affirmed.

---

8. Federal Evidence Act, Title 28, Ch. 115, § 1732.