**Viola Kelly, Plaintiff-Appellee, v. C. Iber & Sons, Inc., Defendant-Appellant.**

**Gen. No. 11,125.**

Second District, Second Division.
May 8, 1958.
Released for publication May 26, 1958.

McConnell, Kennedy, McConnell & Morris, of Peoria, for appellant.

Kellstedt & Young, of Peoria, for appellee.

PRESIDING JUSTICE CROW delivered the opinion of the court.

The plaintiff, Viola Kelly, brought suit March 25, 1955 to recover damages for personal injuries alleged to have been caused November 10, 1953 by the negligence of the defendant, C. Iber & Sons, Inc. The jury returned a verdict for the plaintiff for $15,500, and judgment was entered thereon. The defendant appeals. The defendant's motions for directed verdict at the close of the plaintiff's evidence, and at the close of all the evidence, and its post trial motion for new trial or judgment notwithstanding the verdict were denied.

The complaint consisted of two counts, and alleged, generally, that the defendant, a contractor, was engaged in completing the construction of a building known as the Limestone Community High School, in the city of Bartonville, and the plaintiff, while in the exercise of due care and while employed in the school, was injured November 10, 1953 due to the defendant's negligence. The negligence complained of was, Count I, that the defendant failed to keep a doorway free from obstructions, in that it permitted a piece of metal approximately six inches long and one half inch high, used in the construction of the doorway, to extend up from the floor at the side of the middle doorway area, a doorway through which it was necessary that the plaintiff pass; and that, Count II, in addition, the defendant failed to rope off, post, and guard the piece of metal; and that the plaintiff unexpectedly and without warning tripped over the piece of metal, causing her to fall to the floor and suffer injuries. So far as material, the answer denied the alleged negligence, the circumstances of the alleged fall, and the plaintiff's alleged injuries.

The defendant's theory is that the alleged acts of negligence, if they were negligent, were not the prox-

391

imate cause of the plaintiff's injury; that those acts merely created a condition which had existed and was known to the plaintiff for some time prior to the plaintiff's injury; and that the proximate cause of the plaintiff's injury was either the negligent act of a third person in knocking the plaintiff down, or the plaintiff's contributory negligence in tripping over the piece of metal. The defendant also contends that counsel for the plaintiff was guilty of prejudicial misconduct in the examination of prospective jurors on voir dire, and the court erred in not declaring a mistrial or a new trial; that the verdict is excessive and based upon passion and prejudice, and was enhanced by the admission of incompetent evidence; and that the court erroneously instructed the jury.

The plaintiff, Viola Kelly, was employed at the Limestone Community High School as a cafeteria worker. The defendant, C. Iber & Sons, Inc., is a general contractor, and was engaged in completing the construction of the school building. The school was open and in use, but the cafeteria, and the gymnasium to the west of it, were not finished, the contractor was working around the place, there were some building materials obstructing passage to some extent through a three door doorway area near the cafeteria end of a hallway, and the plaintiff was aware she had to watch where she was going at all times. The doorway area in question was used for the passage of students between the academic part and the cafeteria part and the gymnasium part of the building. The doorway was also used by other persons, like Mrs. Kelly, the plaintiff, and the workmen in passing from the cafeteria and the gymnasium parts back to the academic part and vice versa. The plaintiff claims that there was a large bale of wire obstructing the easterly-most area of that doorway, and that there was a piece of metal in the floor obstructing passage through the right side of

the center area of that doorway, and for those reasons, she was accustomed to using the westerly area of that doorway. She states that this piece of metal in the floor was observed by her for several days prior to November 10, 1953, she knew it was there, and she used this doorway area several times a day. Others had also observed it the same day. The doors were evidently not hung at the time, but the framework was in, and apparently, though the evidence is somewhat confusing, one or both of the two uprights, or mullions, in the middle of the doorway area on which two of the doors were to be hung were in place or partially in place. The piece of metal concerned was "U" shaped, about the size indicated in the complaint, and was set in the floor at the base of one of the middle uprights or mullions or where one of the uprights or mullions was later to be placed. The defendant's job superintendent, testifying not from independent recollection but from daily progress reports and some photographs taken some time after the incident concerned, indicated the doors were on, or hung, in this doorway, the frame in, and the middle uprights or mullions in place when the incident occurred. He said the doorway frame and two uprights in the middle thereof come as a single welded unit, there are two metal anchor pieces about 5½″ x 1¾″ which fit in the floor, the two middle uprights fit over and are attached to those anchor pieces, and when so installed the anchor pieces are not exposed at all. The area was in use and was not roped off, posted with a sign, or guarded. The lighting was good, and the piece of metal was visible. The floor was concrete, the asphalt tile covering being not yet installed evidently at this particular point.

On the date in question, at about 1:30 in the afternoon, the plaintiff was taking the lunch money from the cafeteria to the office, and started out through the westerly part of that doorway area when some students

came through the doorway toward her. She states that in order to avoid being run into by these children, she stepped sideways, tripped over this piece of metal in the floor, catching her right foot thereon, and fell to the right, principally on her right knee. The plaintiff's assistant, a Mrs. Mohn, who was following the plaintiff out of the doorway at the time, stated that the students "kinda hit" the plaintiff, brushed into the plaintiff, and kind of pushed her, causing her to fall, but she did not see them knock the plaintiff to the floor. The plaintiff did not remember, but did not think that the students hit or pushed her. She said they did not knock her to the floor. She stated that she did not step forward, but merely sideways, and that she did not have time to go forward any farther prior to the time she fell. She commented that if it had not been for the students coming towards her she would never have fallen. Students passing through that doorway area had run into her before this incident and afterwards.

No bones were broken, but she suffered some pain. She received first aid at the school, later treated herself there and at home, did not see her doctor until about August, 1954, and thereafter had medical attention from him and certain orthopedic specialists. She was not hospitalized, continued to work regularly, and lost no wages because of the injury. In fact, she has had a small wage increase since. She used leg bandages, elastic stockings, heat treatments, a particular kind of shoe, and a knee brace, which she continued to wear at the time of trial, and she used a cane. The right knee occasionally locked on her. The plaintiff was 57, a rather short lady, about 5′ 3″, and rather heavily set, 230–300 pounds. She had no limp before the injury, got around normally, but had some limp afterwards, and some impairment of her ability to get around, though the Superintendent of the school said her ability to manage the cafeteria still is very fine. Her total

medical and other expenses were about $730. She'd had no prior leg or knee trouble. At the time of trial in 1957 her right knee still bothered her, she still used the brace and cane, and still suffered some pain. Her medical evidence was to the effect her condition is permanent, a fall such as she had could cause the injury, she will need future medical services, and she has traumatic arthritis of the right knee. The defendant's medical evidence, in part, was to the effect she had chronic degenerative arthritis, and there was no definite indication of trauma, but that trauma could aggravate a preexisting condition of arthritis.

Among the errors urged by the defendant it says that the court erroneously instructed the jury by giving the plaintiff's instructions Nos. 6, 8, 9, 11, 12, 15, and 16.

■ The plaintiff's instruction No. 6 was apparently intended to be a commonly called sudden emergency, sudden danger, or imminent peril instruction, and was as follows:

"If, without fault on his part, a person suddenly is confronted with what would appear to an ordinarily careful person to be danger, then he is not required to use the same degree of care which is required under ordinary circumstances, but in such a situation it is his duty to use that degree of care which would be used by an ordinarily careful person, taking such danger, if any, into consideration."

We think that instruction was, first, not proper as a matter of form. The usual phraseology of a so-called sudden emergency, sudden danger, or imminent peril instruction, in the cases and authorities we have examined, and which has been approved, is as follows:

"The court instructs the jury that if a person, without fault on her part, is confronted with sudden danger or apparent sudden danger, the obligation resting upon her to exercise ordinary care for her own safety does not require her to act with the same deliberation and

foresight which might be required under ordinary circumstances."

See: Chicago Union Traction Co. v. Newmiller (1905) 215 Ill. 383; Kavanaugh v. Parret (1942) 379 Ill. 273; Budovic v. Eschbach (1953) 349 Ill. App. 163; Hemphill, Illinois Jury Instructions, Vol. 2, Sec. 4042 ff. The plaintiff refers us to no Illinois case, and we know of none, where an instruction on sudden emergency, sudden danger, or imminent peril, in the form of plaintiff's instruction No. 6 here given, has been given and approved. In Hawbaker v. Danner (1955) 226 F.2d 843, C of A, 7th, referred to by the plaintiff, a case arising in a Federal Court in Illinois, an instruction of the type here given was apparently given, but there was evidently no objection made thereto, no issue thereon in the Court of Appeals, and the propriety thereof as a matter of form was not passed upon.

■ There is considerable difference, as will be seen, between advising the jury, in a situation where a sudden emergency type of instruction is otherwise appropriate, that "the obligation resting upon her to exercise ordinary care for her own safety does not require her to act with the same deliberation or foresight which might be required under ordinary circumstances," and, on the other hand, advising the jury, as the plaintiff's instruction No. 6 does, that "he is not required to use the same degree of care which is required under ordinary circumstances, but . . . that degree of care which would be used by an ordinarily careful person taking such danger, if any, into consideration." A person, in all events, is required to exercise ordinary care for his or her own safety under the circumstances, though in a sudden emergency type of situation that duty does not require him or her to act with the same deliberation or foresight which would be required under ordinary circumstances, and that is all the jury should be told in an instruction of this

nature, where it is otherwise appropriate and supported by the evidence. There is no distinction in "degrees of care," as such, so far as the plaintiff is concerned, and to emphasize some supposed distinction therein is erroneous and likely to be confusing to the jury. One of the plaintiff's other given instructions, No. 7, seems to recognize these principles, but when it is read in conjunction with No. 6 the error in and possibly confusing effect of No. 6 is even more apparent.

■ Further, an instruction of that nature, we do not believe, is applicable to or supported by the evidence in this particular case. This does not appear to be a situation of sudden emergency, or sudden danger, arising from some imminent peril, and none of the cases referred to by the parties, including Kavanaugh v. Parret (1942) 379 Ill. 273 and Hawbaker v. Danner (1955) 226 F.2d 843, cited by the plaintiff, involved facts at all similar to those of the present case. The physical facts as to this three door doorway area and the piece of metal in the floor were, of course, fixed, immovable, and not in motion. The doorway area and the piece of metal had been there for some time, and were known to the plaintiff. They were not concealed. There were no doors installed and in place, which might possibly have concealed oncoming people, or which possibly might have been swinging or in motion and enhanced the danger. At least one, and maybe both of the middle uprights were not there at the time, and the area was more open than it otherwise would have been. The area was regularly used by people, including the plaintiff. There seems to have been nothing unusual in the circumstances of a group of students coming through the doorway area at the time, and at the same time the plaintiff was going through it the opposite way. The lighting was good. The piece of metal was visible. The plaintiff could have apparently just stopped, stood still, and let the oncoming students

397

pass by. Students had run into her at that point before, and they did so afterwards. She was aware she had to watch where she was going at all times. The elements of real surprise, quick confrontation of a party with some real danger she could not reasonably have foreseen, such as were present in Chicago Union Traction Co. v. Newmiller, supra (an explosion in part of the machinery of a street car, and resulting fire and panic), or in Kavanaugh v. Parret, supra (an automobile suddenly approaching a bicyclist from the rear, without warning), or in Budovic v. Eschbach, supra (a pedestrian suddenly appearing from in back of a truck and walking across a highway), or in Hawbaker v. Danner, supra (a motorist suddenly confronted, while on a bridge covered with ice, snow, slush, and water, with a collision of two other vehicles in his lane of travel and two other vehicles moving toward him in the other lane of travel),—are simply not present in the case at bar.

The plaintiff's given instructions Nos. 8 and 9 were as follows:

No. 8: "You are instructed that if you believe from a preponderance of the evidence that the defendant, C. Iber & Sons, a corporation, did fail to keep a doorway area free from obstruction as alleged in Count I of the plaintiff's complaint herein and if you further find from a preponderance of the evidence that it was negligent of the defendant to so fail to keep such doorway area free from obstruction and if you find from a preponderance of the evidence that the plaintiff, while exercising reasonable care for her own safety, was injured through such negligence of the defendant then you should find for the plaintiff, Viola Kelly as to Count I."

No. 9: "You are instructed that if you believe from a preponderance of the evidence that the defendant, C. Iber & Sons, a corporation, did fail to rope off,

post or guard a piece of metal in a doorway area as alleged in Count II of the plaintiff's complaint herein and if you further find from a preponderance of the evidence that it was negligent of the defendant to so fail to rope off, post or guard such piece of metal and if you find from a preponderance of the evidence that the plaintiff, while exercising reasonable care for her own safety, was injured through such negligence of the defendant, then you should find for the plaintiff, Viola Kelly as to Count II."

■■■■ The plaintiff's instructions Nos. 8 and 9 are both peremptory instructions and direct a verdict for the plaintiff if the jury finds the facts in accordance therewith. As such they were required to be particularly accurate, to be complete in and of themselves, and include all of the essential elements necessary to a recovery by the plaintiff. They both omit, however, the necessary element of proximate cause, that is, that the defendant's negligence, if found to have existed, must also be found to have been a proximate cause of the plaintiff's alleged injury. We do not believe the phraseology towards the end of each instruction "was injured through such negligence of the defendant" is, by itself, a sufficient statement of, or reference to, the essential element of proximate cause. In this case that element is a material consideration. The effect of the instructions was to tell the jury that if they found from the evidence that the matters stated therein had been proved then they should find for the plaintiff, and this without regard to what the evidence showed as to the defendant's alleged negligence being or not being a proximate cause of the plaintiff's injury. It was incumbent on the plaintiff to allege and prove, among other things, that the defendant's negligence, if found, was a proximate cause of the injury. In omitting to state that essential element it was error to give them. Where a peremptory instruction for the plaintiff omits

a fact, circumstance, or element essential to recovery the error cannot be cured by any other instruction in the series of instructions: Hanson v. Trust Co. of Chicago (1942) 380 Ill. 194. The principle is well settled: O'Day v. Crabb (1915) 269 Ill. 123; Hemphill, Illinois Jury Instructions, Vol. 1, Secs. 185, 204, 205. It has been applied to peremptory instructions which have omitted the element of proximate cause: Mc-Grath et al. v. Fluech (1947) 330 Ill. App. 462 (abst.); Ripke v. Bernstein (1947) 332 Ill. App. 658. We do not think Allied Mills, Inc. v. Miller (1956) 9 Ill.App.2d 87, and Henderson v. Shives (1956) 10 Ill.App.2d 475, referred to by the plaintiff, were intended to hold anything to the contrary. Hence, the circumstance that certain other given instructions here related to proximate cause does not cure the omissions.

Horney v. St. Louis & Northeastern Ry. Co. (1911) 165 Ill. App. 547, cited by the plaintiff, has no apparent bearing at all on the present case. In Rzeszewski v. Barth (1944) 324 Ill. App. 345, cited by the plaintiff, a defendant's negative type instruction containing the language "was due solely to the negligence of one Narvid and not through any negligence as charged on the part of the defendant, Paul Barth" was held not to be subject to criticism, particularly as against the plaintiff's contention it directed a verdict without requiring the jury to find the injury was the proximate result of Narvid's negligence. The instruction there was not similar to the ones here involved, and the particular question concerned was not the same. In various other cases referred to by the plaintiff, involving either plaintiff's or defendant's instructions on either contributory negligence or negligence, phrases have been used such as "occasioned to him on account of his own negligence" (Edwards v. Hill-Thomas Lime & Cement Co. (1941) 378 Ill. 180), "by and through the negligence of the

400

defendant as charged in the declaration" (Wende v. Chicago City Ry. Co. (1915) 271 Ill. 437), "injured by the negligence of the defendant" (Chicago City Ry. Co. v. Foster (1907) 226 Ill. 288), "was caused by or through the negligence of the defendants" (Economy Light & Power Co. v. Hiller (1903) 203 Ill. 518), "injured in consequence of the negligence of the defendant" (Gerke v. Fancher (1895) 158 Ill. 375), "by reason thereof the deceased . . . was injured and killed" (Chicago and Alton R. Co. v. Nelson (1894) 153 Ill. 89), and "injured by or in consequence of the negligence of the defendant" (Chicago and Alton R. Co. v. Fisher (1892) 141 Ill. 614). But in none of those cases were the instructions objected to for any reason connected with proximate cause,—proximate cause was not discussed at all,—and they were all determined on entirely different issues and questions and for other reasons.

■ The plaintiff's given Instruction No. 11 briefly purports to state, in part, what is charged in the complaint, and what the issues were, and was as follows:

"Count I of the complaint alleges that the plaintiff, Viola Kelly, was injured and sustained damage while exercising reasonable care and that the defendant, C. Iber & Sons, a corporation, was guilty of the following:

"Negligently failing to keep a doorway area leading from the hall located between the cafeteria and the gymnasium in the building known as Limestone Community High School free from obstruction.

"The defendant denies the foregoing.

"Count II of the complaint alleges that the plaintiff was injured and sustained damage while exercising reasonable care and that the defendant was guilty of the following:

"Negligently failing to rope off, post or guard a piece of metal in a doorway area leading from a hall located between the cafeteria and the gymnasium of a building

401

known as Limestone Community High School which piece of metal was used in the construction of said high school by the defendant.

"The defendant denies the foregoing.

"These are the issues which you are to determine from the evidence and under the instructions of the court."

As will be seen, that instruction also omits, among other things, any reference to the alleged negligence of the defendant as being a proximate cause of the plaintiff's injuries. Though not in form a peremptory instruction, as such, the concluding sentence thereof "These are the issues which you are to determine from the evidence and under the instructions of the court" limits the jury's inquiry and consideration to the issues referred to therein, which statement of the issues omits, inter alia, the essential element of proximate cause. Being an instruction of the type it was, that is, one purporting to define the issues, it should be, but is not, accurate and complete. The question of proximate cause was a significant issue. This instruction, in purporting to define and submit the issues to the jury, but omitting proximate cause, does not correctly define the issues and we believe had a tendency to mislead the jury: Chicago and Alton R. Co. v. Gore (1900) 92 Ill. App. 418. It is subject to the same objections as Nos. 8 and 9.

It is important that the issues be explained to the jury, but they should be stated clearly and concisely, and all charges that are to be disregarded should be eliminated: Reivitz v. Chicago Rapid Transit Co. (1927) 327 Ill. 207,—and, conversely, all charges or issues that are to be regarded and considered should be included in an instruction of that type. Ordinarily, of course, instructions should be considered as a series, and, when they are not in conflict with each other as far as they go, if an instruction not peremptory or

402

peremptory in character omits an essential element the omission may be cured by other given instructions: Suehr v. Sanitary District (1909) 242 Ill. 496; Walsh v. Chicago Rys. Co. (1922) 303 Ill. 339; Smith v. Seelbach (1949) 336 Ill. App. 480. But when the instruction purports to state the issues and specifically says "These are the issues which you are to determine from the evidence and under the instructions of the court" it must state the substance of all the issues and if proximate cause be an issue, as here, it should be included therein.

The defendant criticizes the plaintiff's instructions Nos. 12, 15, and 16, but cites no authority to the effect that the giving of those instructions is reversible error, and it is unnecessary for us to pass on them.

We believe this judgment must be and is hereby reversed and the cause remanded for a new trial by reason of the giving of the plaintiff's erroneous instructions Nos. 6, 8, 9, and 11.

Other errors are argued, but in the view we take, it is not necessary to pass thereon.

Reversed and remanded.

SOLFISBURG and WRIGHT, JJ., concur.