J-A13030-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :    IN THE SUPERIOR COURT OF
                  :            PENNSYLVANIA
                  :
          v.             :
                  :
                  :
KEVIN SCOTT FOUNTAIN        :
                  :
        Appellant      :     No. 944 MDA 2022

Appeal from the Judgment of Sentence Entered January 27, 2022
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0006836-2018

BEFORE:   BOWES, J., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:         **FILED DECEMBER 14, 2023**

Kevin Scott Fountain appeals from his judgment of sentence, entered in

the Court of Common Pleas of York County, after a jury convicted him of one

count each of attempted rape of a child,[1] aggravated indecent assault of a

child,[2] and corruption of minors,[3] and two counts of indecent assault of a

person less than 13 years of age.[4]  Based upon the unique factual

circumstances of this case and the fact that the trial court committed a

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 901.

[2] *Id.* at § 3125(b).

[3] *Id.* at § 6301.

[4] *Id.* at § 3126(b)(3)(IV).

structural error by failing to render the required Pa.R.Crim.P. 121 (hereinafter, Rule 121) waiver of counsel colloquy before the start of Fountain's third and final jury trial,[5] we are constrained to vacate his judgment of sentence and remand for a new trial.[6]

**Facts**

The trial court sets forth the facts of this case as follows:

This case has a convoluted and lengthy procedural history, with several different jurists [presiding over the course of three separate jury trials. On October 18, 2018, Fountain was charged with multiple criminal counts related to the sexual assault of a minor, H.B. Fountain was the paramour of H.B.'s mother at the time of the alleged acts.] At [his] arraignment on December 21, 2018[, before the Honorable Maria M. Cook, Fountain]: [r]efused to sign any of the paperwork[;] [r]efused to participate[;] and [became] disruptive and had to be removed from the courtroom.[7] [As a result of these disruptions, the court entered Fountain's status as *pro se* on his waiver of arraignment form.[8]]

_____

[5] As discussed *infra*, Fountain's first two trials resulted in hung juries.

[6] As much as Fountain may have had constructive knowledge regarding forfeiture of counsel and waiving the right to counsel, we cannot find harmless the court's clear structural error that impinged on Fountain's constitutional right to counsel at the commencement of his third trial.

[7] Both parties' briefs suggest that Fountain waived his right to counsel at a preliminary hearing on November 16, 2018, before a Magisterial District Judge. **See** Appellant's Brief, at 5; **see also** Appellee's Brief, at 5. However, the notes of testimony from the preliminary hearing are not in the certified record and, thus, we cannot rely upon it for purposes of this appeal. **See** **Commonwealth v. Walker**, 878 A.2d 887, 888 (Pa. Super. 2005) ("As an appellate court, our review is limited by the contents of the certified record.").

[8] **See** Waiver of Arraignment Form, 12/21/18.

The trial court [] provided [Fountain] with a copy of his arraignment paperwork[,] as well as a copy of the Information "so that the charges filed against him [were] clear."

On March 18, 2019, the Commonwealth [moved] for appointment of counsel for the limited purpose of cross-examination of the child victim because[,] as [Fountain] was being escorted from the courtroom after [his] preliminary hearing, [Fountain] indicated that the individuals in the courtroom ["]should be scared.["] At [a subsequent April 5, 2019 hearing on that motion before the Honorable Michael E. Bortner], the trial court attempted to colloquy [Fountain] on whether he wished to proceed *pro se*. When asked if [Fountain] still intend[ed to] represent[] himself, [he stated he did not wish to have appointed counsel represent him, instead wishing to have the Moorish American Consulate Worldwide[9] represent him, and further stated he had provided the court with several documents containing the Consulate's information. When the court refused to discuss the contents of those documents at that time and tried to help Fountain understand the purpose of the hearing that day, Fountain then protested the entire hearing and challenged the jurisdiction of the trial court. The court concluded the hearing when it could no longer tolerate Fountain's argumentative behavior, while simultaneously granting the Commonwealth's motion.] As a result of this hearing, the trial court appointed Richard Robinson[, Esquire,] on April 10, 2019, as standby counsel for [Fountain, solely to cross-examine the child victim.] On September 5, 2019, Attorney Robinson filed a motion to withdraw as [standby]

---

[9] According to the Southern Poverty Law Center:

Moorish sovereign citizens espouse an anti[-]government doctrine in which its members claim to be part of a sovereign nation. For some who identify themselves as "Moor," "Moorish" or something similar, there is a belief that a **fictitious** 1787 treaty between the United States and Morocco grants them immunity from U.S. law. . . . Moorish sovereigns believe their status as members of a sovereign nation imparts immunity from federal, state[,] and local authorities.

*Moorish Sovereign Citizens*, S. Poverty L. Ctr., https://www.splcenter.org/fighting-hate/extremist-files/group/moorish-sovereign-citizens (emphasis added) (last visited June 14, 2023).

counsel. . . . [He] indicated that at [two] hearings [he attended], [Fountain] instructed counsel be kept away from him [] and [that Fountain] would not communicate in any way with him. Attorney Robinson believed that [Fountain did] not want counsel, [did] not want counsel to provide any input, did not want him to act as standby counsel[,] and did not want Attorney Robinson to cross-examine the victim.[10]

\* \* \*

[Fountain's] **first jury trial**, [was held from September 23, 2019 through September 30, 2019, before the Honorable Michael E. Bortner. Prior to *voir dire*, Fountain objected to his association with Attorney Robinson as standby counsel, claiming that he had no idea who Attorney Robinson was, that he did not appoint anyone as counsel, that he has continued to send documents to the court regarding the Moorish American Consulate, and that he and Attorney Robinson were not of the same nation-state.]

Immediately after that exchange, [Fountain exhibited] belligerent and dilatory behavior . . . regarding [telling the court his true] name, whether [] the proceeding was a trial, and[, once again,] challenging the jurisdiction of the trial court. [Fountain's] behavior . . . resulted in [his removal from] the courtroom. Afterward, [the trial court further discussed Attorney Robinson's capacity as counsel for Fountain, where not only Attorney Robinson explained Fountain's continued refusals to meet with him, but both the Commonwealth and the Clerk's office noted they were experiencing a similar form of noncompliance with the completion of any documents those parties directed to Fountain]. . . . [After further discussing Attorney Robinson's capacity as counsel, the court] . . . [again] appointed [him as] standby counsel for [Fountain, solely to cross-examine the child victim.]

After a brief recess, the trial resumed with [Fountain] being brought back in[to] the courtroom. Prior to selecting the jury, [Fountain again stated his counsel was the Moorish American Consulate, that he had sent the court information on that counsel, and again objected to the appointment of standby counsel.] . . . [After confirming Attorney Robinson's role as standby counsel, Fountain] again indicated that he [did] not consent to the proceedings, claiming they were illegal and unlawful, and again

---

[10] There is no indication in the record that Attorney Robinson's motion to withdraw was addressed by the trial court prior to this first trial.

challenged the jurisdiction of the court (claiming [] this case was a federal matter []). Thereafter, [Fountain] refused to accept the juror questionnaires when they were offered to him. [After a brief recess, the first jury trial commenced, at which Fountain] gave an opening statement, cross-examined the Commonwealth witnesses (excluding [] the victim), called a[nd examined a] witness on his own behalf. . . , and gave a closing argument. [Attorney Robinson performed cross-examination on the child victim. Fountain's] first trial ended in a mistrial due to a hung jury.

[Fountain's] case was [] called for [a **second**] **trial** on January 13, 2020[,] before the Honorable Richard K. Renn. The trial court asked Attorney Robinson if he was appointed as [Fountain's] attorney just for cross-examination of the victim, and [he] replied that he was. . . . [T]hereafter, [the court addressed whether Fountain would continue without counsel. Rather than answer the question directly, Fountain stated he had several issues he would like to discuss before providing an answer. Fountain was then colloquied by the court as to the nature of the charges, elements of the offenses, and the maximum sentences [that] could be imposed for those offenses charged]. When asked if [Fountain] understood or if he had any questions[,] . . . [Fountain requested and received a copy of the charges from the court.] The trial court further explained that if [Fountain waived] the right to counsel, he [would] still be bound by all the normal rules of procedure and that counsel would be familiar with these rules. When asked if [Fountain] understood, [he] said "no." The trial court attempted to ascertain what [Fountain] did not understand, but [he] simply repeated[,] "I don't understand," and then[,] "I don't understand what you just said." The trial court responded[,] "I don't know how I can make it any plainer for you. If you decide to undertake your own defense, you're bound by the same rules that we are all bound by[.]" The trial court went on to explain [that there are possible defenses to charges Fountain was informed about, and that he must raise them, or they will be permanently lost to him; he was also informed that if he has any objections to the evidence, questions, or testimony, he must raise them in a timely manner or consider them waived].

When [the court] asked [Fountain again] if [he] had any questions, [he continued to profess that he did not understand, and that he had continued to seek out the Moorish American Consulate as counsel but was concerned as to why the Consulate had not been contacted. The court responded that Fountain has

the right for this private counsel to be present under the circumstances, and that Fountain's failure to retain this private counsel suggests that he was waiving this right to counsel. In response to this, Fountain asked to converse with Attorney Robinson.]

After [Fountain] spoke with Attorney Robinson off the record, Attorney Robinson indicated that he wished to have him represent him for the entire trial. The trial court granted Attorney Robinson's request for a continuance so that he could properly prepare for trial. In the trial court's [continuance order, it found] that: [Fountain] made a knowing and intelligent request for counsel, knowing the matter [would] be further delayed; [w]hile [Fountain] indicated he wanted counsel of his choice, [that counsel] ha[d] to be ready to try the case when it [was] called[;] and that no counsel of [Fountain's] choice appeared for trial on January 13, 2020.

On August 17, 2020, [Fountain] filed several *pro se* motions, one of which [was a] "revocation of power of attorney" wherein [Fountain] wanted Attorney Robinson removed [as defense counsel]. Thereafter, on August 25, 2020, Attorney Robinson filed a "motion for appointment of new court-appointed counsel." In that motion, Attorney Robinson indicated . . . that the attorney-client relationship [had] deteriorated to the point that counsel [could not] adequately communicate and represent [Fountain]. On August 27, 2020, [a hearing was held] on Attorney Robinson's motion. At that hearing, Attorney Robinson indicated that in [more than] thirty-two (32) years of [practice, during which he represented over 6,000 clients, this was only the third time he recalls filling a motion to withdraw as appointed counsel]. When the trial court asked [Fountain] whether he wanted Attorney Robinson to represent him, [Fountain] stated[,] "No, ma'am. I will do things *pro se* [from] here on out." At the conclusion of the hearing, the trial court granted Attorney Robinson's request to withdraw, and appointed [] Ronald Gross[, Esquire,] as standby counsel for the [sole] purpose of the cross-examination of the child victim.

[Fountain's] case was called for his second jury trial[, before the Honorable Harry M. Ness,] on November 9, 2020. . . . At this second jury trial, [Fountain] gave an opening statement, cross-examined each of the Commonwealth witnesses, called his own witnesses and performed the direct examination of that witness, testified on his own behalf, and gave a closing argument.

- 6 -

[Attorney Gross performed cross-examination on the child victim. This] second trial also resulted in a mistrial due to a hung jury.

[Fountain's] **third jury trial** began on September 27, 2021 [ before the Honorable Gregory M. Snyder].  The trial court was told by the tipstaff that [Fountain] did not wish Attorney Gross to be present. . . .  Upon further questioning [Fountain] indicated he did want standby counsel, but just not Attorney Gross.  [Fountain] claimed he had not seen Attorney Gross for a while and they had not gone over their strategy for trial. . . .  Attorney Gross[, in his limited capacity as standby counsel,] indicated to the trial court that he did not fail to respond to any requests made by [Fountain]. The trial court explained to [Fountain] that Attorney Gross is his standby counsel, [and he could have this standby counsel excused if he found necessary. Fountain] said he [did] not want Attorney Gross as standby counsel because [Attorney Gross refused to] ask the victim the questions [Fountain] wanted him to ask.  Attorney Gross indicated he [was unaware] of any questions requested by [Fountain] that [Attorney Gross] was unwilling to ask.  The trial court resolved this issue by . . . review[ing] any proposed questions [Fountain] had for the child victim and [indicating it would rule accordingly] on those questions.

\*   \*   \*

[I]mmediately prior to *voir dire*, the trial court indicated it would make sure that prospective jurors kn[e]w that [Fountain had] elected to represent himself, [] he[ had] been given notice of what that means, and that Attorney Gross would be acting as standby counsel.  [The court then proceeded to remind Fountain of Attorney Gross's capacity as standby counsel, and, during *voir dire*, explained to the potential jurors that Fountain had been colloquied, that he understood he was waiving his right to counsel, and that Attorney Gross was acting as standby counsel.  However, the court had failed to indicate to the jurors that the waiver colloquy occurred during Fountain's second trial, and that the court had not conducted a colloquy before this third trial.]

At [Fountain's] third jury trial, he gave an opening statement and cross-examined [] Commonwealth witnesses, [excluding the Children's Advocacy Center's forensic interviewer.  Fountain did not call any witnesses or testify on his own behalf.] . . . [Fountain] elected to have Attorney [] Gross give the closing argument on his behalf.

Trial Court Opinion, 10/13/22, at 2-16 (unpaginated, some citations omitted).

On September 28, 2021, the jury in Fountain's third trial found him guilty of the above-mentioned offenses. On January 26, 2022, the trial court imposed the following sentence: a standard-range sentence of 6 to 12 years' imprisonment for attempted rape; a mandatory minimum sentence of 10 to 20 years' imprisonment for aggravated indecent assault, to run consecutively with the attempted rape sentence; two standard-range sentences of 16 to 32 months' imprisonment for indecent assault and corruption of minors, both to run concurrently with the aggravated indecent assault sentence; and 1,315 days' credit for time-served. *See* N.T. Sentencing Hearing, 1/27/22, at 16-22.

Fountain filed a timely notice of appeal and court-ordered Pa.R.A.P 1925(b) concise statement of errors complained of on appeal. Fountain raises the following issue for our consideration:

> Is [] Fountain entitled to a new trial where he invoked his right to counsel on the only occasion the colloquy required under Rule 121 took place, he was later allowed to waive counsel without a proper colloquy, he went on to represent himself at trial, and he did not forfeit his right to counsel?

Appellant's Brief, at 4.

## Analysis

"The alleged denial of a constitutional right is a question of law for which our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Lucarelli***, 971 A.2d 1173, 1178 (Pa. 2009). The Sixth

Amendment to the United States Constitution and Article I, § 9, of the Pennsylvania Constitution guarantee a criminal defendant the right to assistance of counsel and the right to self-representation. *Commonwealth v. Forrester-Westad*, 282 A.3d 811, 816 (Pa. Super. 2022). "[T]he constitutional right to counsel of one's own choice[, however,] is not absolute." *Lucarelli*, 971 A.2d, at 1178. "Although a criminal defendant has the right to be represented by counsel, the right can be waived or forfeited." *Commonwealth v. Thomas*, 879 A.2d 246, 257 (Pa. Super. 2005). The Commonwealth must show that a defendant waived his right to counsel by establishing that a proper colloquy occurred, or by showing that the defendant forfeited that right through his displayed course of conduct. *See Lucarelli*, *supra* at 1179.

In *Lucarelli*, *supra*, the Supreme Court of Pennsylvania recognized the legal distinction between waiving the right to counsel and forfeiting that right. The Supreme Court noted that while "[w]aiver is an intentional and voluntary relinquishment of a known right, forfeiture does not require any intent to relinquish a right, but rather arises from a defendant's 'extremely serious misconduct' or 'extremely dilatory conduct.'" *Id.* at 1179. More specifically, forfeiture primarily arises when a defendant "engage[s] in physically abusive and threatening conduct[,] hamper[s] and delay[s] the state's efforts to effectively administer justice[, or] demonstrates his or her intention not to seek representation by private counsel." *Id.* at 1179-80.

- 9 -

Instantly, Fountain contends that he did not forfeit his right to counsel, and that this is not a forfeiture case. **See** Appellant's Brief, at 40. Instead, he argues that his behavior did not eliminate the requirement for a proper waiver of counsel colloquy for his first two trials, and, especially, prior to his third trial. **See** Pa.R.A.P 1925(b) Statement, 8/2/22, at ¶¶ 1-3 (Fountain contending trial court's failure to provide Rule 121 waiver of counsel colloquy, prior to third trial, constitutes reversible error). However, the trial court insists that Fountain's "words and actions . . . made it clear he [was] not interested in being represented by counsel, and . . . [that he] thwarted and refused repeated [colloquy attempts,]" constituting a forfeiture of Fountain's right to counsel. Trial Court Opinion, 10/13/22, at 17.

We agree with the trial court that Fountain forfeited his right to counsel, based on his conduct, in his first two trials. However, we find that the court's failure to administer any waiver of counsel colloquy before allowing Fountain to proceed *pro se* for his third trial is reversible error. **See Commonwealth v. Murphy**, 214 A.3d 675, 678 (Pa. Super. 2019) (holding failure to conduct Rule 121 on-the-record waiver colloquy is reversible error).[11]

**Jury Trial #1**

In Fountain's first trial, his serial refusals to comply with both arraignment and pre-trial proceedings, and the trial court's need to remove

_____

[11] Due to both the rich factual narrative and the constitutional significance of the issues at hand, we have broken down this appeal by each individual trial.

- 10 -

Fountain from those proceedings support a finding of forfeiture of counsel. *See Commonwealth v. Thomas*, 879 A.2d 246, 257 (Pa. Super. 2005) (holding defendant's ongoing threats and disruptions requiring defendant's ongoing removal from courtroom amounted to forfeiture).[12]  Additionally, Fountain's bald, unsubstantiated claims that he was represented by the Moorish American Consulate, despite no record evidence that he had any intention to hire private counsel on his behalf, further demonstrates forfeiture of his right to counsel.  *See Lucarelli*, *supra* (holding defendant with no explanation for failure to retain private counsel after having ample time and financial opportunity to do so at trial, forfeited right to counsel); *see also Commonwealth v. Travillion*, 17 A.3d 1247, 1248 (Pa. 2011) (finding defendant's continuous refusals to meet with court-appointed counsel resulted in forfeiture).  Rather than take steps to communicate with the Consulate,,

---

[12] At his arraignment on December 21, 2018, Fountain refused to sign any of the paperwork, refused to participate or otherwise cooperate with the court, and was disruptive to the point that he had to be removed from the courtroom." *See* N.T Arraignment Hearing, 12/18/18, at 2-3.  In addition, at the April 5, 2019 hearing on the Commonwealth's motion to appoint standby counsel, Fountain belligerently argued with the court on its jurisdictional authority to hear his case.  *See* N.T Motion for Appointment Hearing, 4/5/19, at 8-14.  The court refused to argue with Fountain and concluded the proceeding in order to remove him from the courtroom.  *See id.* at 15-16. Moreover, prior to *voir dire* at his first trial, Fountain again challenged the jurisdiction of the court, contested his name in the proceeding, and questioned whether that proceeding was a trial, necessitating his third removal from the courtroom.  *See* N.T. Jury Trial I, 9/23/19, at 5-12.  Fountain's continuing challenges to the jurisdiction of the court and refusals to accept any jury questionnaires, further supports the finding of forfeiture.  *See id.* at 22-26.

Fountain blamed the court for his own failures to establish formal representation.[13] We concur with the trial court that the length and resurgence of Fountain's combative behavior at each stage of his first trial, coupled with his failure to take any active steps to secure his preferred private counsel,[14] constitutes dilatory conduct resulting in Fountain's forfeiture of his right to counsel in his first trial.

_____

[13] Even though Fountain had requested that the Moorish-American Consulate Worldwide represent him at his first trial, **see** N.T. Motion Hearing, 4/5/19, at 6, he took no affirmative steps to have this private entity appear for him as counsel for his first trial. **See id.** (at hearing for appointment of standby counsel, Fountain stated he had provided documents about the Moorish American Consulate to the court, but the Consulate had not appeared on his behalf); **see also** N.T. Jury Trial I, 9/23/19, at 4, 17-20 (prior to *voir dire* at first trial, Fountain again stated he had been asking court to contact Moorish American Consulate; after being forcibly removed from courtroom due to subsequent disruptive conduct, court determined Moorish American Consulate had no intention to appear for Fountain and required he proceed *pro se*).

[14] In **Lucarelli**, our Supreme Court specifically held "where a defendant's course of conduct demonstrates his or her intention not to seek representation by private counsel, despite having the opportunity and financial wherewithal to do so, a determination that the defendant be required to proceed *pro se* is mandated because that defendant has forfeited the right to counsel." **Id.** 971 A.2d at 1179. Caselaw has likewise demonstrated that there is a need to show that a defendant had both the opportunity and financial wherewithal to obtain private counsel in order for the failure to do so to result in forfeiture of counsel. **See Commonwealth v. Drummond**, 1219 MDA 2018 (Pa. Super. filed Nov. 15, 2019) (unpublished decision) (finding defendant's abusive behavior causing three public defenders to withdraw, and defendant's subsequent failures to retain private counsel amounted to dilatory conduct of forfeiture). However, because the totality of Fountain's conduct in his first trial (including both his combative behaviors and failure to retain his chosen counsel) demonstrates he forfeited the right to counsel, we do not find the lack of inquiry into his financial wherewithal to secure private counsel fatal to our legal conclusion.

**Jury Trial #2**

In Fountain's second trial, his intentional conduct, which undermined and frustrated his relationship with Attorney Robinson and ultimately lead to counsel's withdrawal, supports a finding of forfeiture of his right to counsel. *See Commonwealth v. McLendon*, 298 WDA 2022, 21 (Pa. Super. filed March 27, 2023)[15] (non-precedential decision)[16] (finding forfeiture where defendant did not cooperate with counsel from appointment to withdrawal over eleven months later).[17] Even with Attorney Robinson as chosen counsel, the record shows Fountain continued to file *pro se* documents on Moorish American Consulate letterhead, and also continued to challenge the court's jurisdiction under his Moorish-American status for seven more months. *See Pro Se* Correspondence, 6/16/20, at 3-8 (Fountain stating he never consented to Attorney Robinson's representation, called trial court belligerent and corrupt for failing to respond to his jurisdictional challenges, and alleged Attorney Robinson colluded with prosecutors to undermine his case); *Pro Se* Correspondence, 5/26/20, at 2-8 (Fountain stating he never consented to Attorney Robinson's representation, insinuated judges are "pretenders" for

---

[15] On May 31, 2023, this Court denied McLendon's application for reargument.

[16] *See* Pa.R.A.P. 126(b) (non-precedential decisions filed after May 1, 2019, may be cited for persuasive value).

[17] McLendon's petition for allowance of appeal, which raises the issue of forfeiture of counsel, is currently pending before the Pennsylvania Supreme Court. *See Commonwealth v. McLendon*, 159 WAL 2023 (filed June 29, 2023).

ignoring his Moorish status, and demanded clerk of courts be held for "fraud and treason" for telling Fountain to stop submitting *pro se* motions); *Pro Se* Correspondence, 5/8/20, at 1-6 (Fountain again challenging jurisdiction of trial court and ordering court to provide an affidavit of its authority over Fountain); *Pro Se* Correspondence, 4/28/20, at 2-5 (Fountain challenging jurisdiction of trial court); *Pro Se* Correspondence, 2/12/20, at 2-12 (Fountain re-forwarding to trial court Moorish-American documents he had previously sent); *Pro Se* Correspondence, 1/15/20, at 1-12 (Fountain forwarding declaration of his Moorish-American Citizenship, a "Notice of Consulate and Orders to Honor the Sovereign Status of Moorish Americans," and an authentication page from two non-lawyer Moorish American representatives). Fountain ultimately filed a *pro se* motion to remove counsel. Thereafter, Attorney Robinson filed a motion to withdraw. **See** N.T. Motion for Appointment of New Court Appointed Counsel Hearing, 8/27/20, at 2-3. Here, the breakdown in the attorney-client relationship between Fountain and Attorney Robinson, after Fountain's request to have Attorney Robinson fully represent him at his second trial, constituted dilatory conduct and amounted to forfeiture.

Moreover, we agree with the Commonwealth that on January 13, 2020, the originally-scheduled date of Fountain's second trial, Fountain's decision to proceed with Attorney Robinson's representation, but later reject his assistance, supports a finding that Fountain forfeited his right to counsel for

his second trial.[18] *See Lucarelli*, *supra* at 1180 (finding forfeiture of counsel where, over 8-½ month period, defendant's attorneys were permitted to withdraw due to defendant's uncooperative conduct by not retaining counsel on several occasions and failing to offer explanation for not retaining counsel by start of trial).

Accordingly, where Fountain had multiple opportunities to seek other counsel, repeatedly undermined Attorney Robinson's representation by filing his own *pro se* motions, and failed to cooperate with Attorney Robinson, Fountain demonstrated extremely dilatory conduct supporting a finding of

_____

[18] When called for retrial on January 13, 2020, Fountain stated that he wished to have the benefit of Attorney Robinson's representation. *See* N.T, Original Date of Jury Trial II, 1/13/20, at 47. As a result, the trial court granted Attorney Robinson's request for a continuance so he could properly prepare for trial. *Id.* at 47-52. However, the court "agree[d] with the Commonwealth [and was] reasonably confident [this invocation was] a delaying tactic." *Id.* at 48. Even with Attorney Robinson now serving as counsel, the record shows Fountain continued to file *pro se* documents with Moorish American Consulate letterhead, and also continued to challenge the court's jurisdiction under his Moorish-American status for seven subsequent months. *See Pro Se* Correspondence, 1/15/20, at 1-12; *see also Pro Se* Correspondence, 2/12/20, at 2-12; *Pro Se* Correspondence, 4/28/20, at 2-5; *Pro Se* Correspondence, 5/8/20, at 1-6; *Pro Se* Correspondence, 5/26/20, at 2-8; *Pro Se* Correspondence, 6/16/20, at 3-8. Fountain ultimately filed a *pro se* motion to remove counsel, followed by Attorney Robinson's motion to withdraw. *See* N.T. Motion for Appointment of New Court Appointed Counsel Hearing, 8/27/20, at 2-3. "Attorney Robinson indicated that he does not believe that [he] and [Fountain] can co-exist." *Id.* at 4. Fountain's *pro se* motion alleged Attorney Robinson colluded with prosecutors to undermine his case and was "in part responsible for [] mental pain, emotional instability, and cruel and unusual punishment being held captive for 700 days." *Pro se* Correspondence, 8/17/20, at 5.

forfeiture.[19] **See Lucarelli**, **supra** at 1178 (while defendant has right to counsel, "the constitutional right to counsel of one's own choice is not absolute").

**Jury Trial #3**

With regard to his third jury trial, Fountain contends that the trial court's failure to provide a Rule 121 waiver of counsel colloquy, prior to his third trial, constitutes reversible error. The Commonwealth, on the other hand, suggests that because Fountain "ha[d] gone through trial a total of three times as his own counsel [and] was well[-]versed in the rules and procedures, [he did not suffer from a] trial by ambush and [had] no unfair [dis]advantage." Appellee's Brief, at 18. The trial court additionally opines that Fountain's "extremely dilatory and vexatious behavior throughout the lengthy duration of the trial" demonstrates he again "forfeited his right to counsel and, therefore, the waiver of counsel colloquy requirements set forth [in Rule] 121 do not apply." Trial Court Opinion, 10/13/22, at 17. We are constrained to disagree.

---

[19] While the COVID-19 pandemic did delay Fountain's second trial in the spring of 2020, there is no indication in the record that the pandemic was the reason that Attorney Robinson and Fountain's relationship broke down, ultimately leading to the finding of forfeiture. Fountain's intentional acts of continuously filing *pro* se documents, all the while being represented by Attorney Robinson, constantly challenging the court's jurisdiction, alleging that Attorney Robinson colluded with prosecutors, and ultimately requesting to have counsel withdraw does not permit him to use the pandemic as an excuse for his dilatory and belligerent behaviors. **See Commonwealth v. Navarro**, 812 EDA 2022, 2023 (Pa. Super. June 20, 2023) (unpublished memorandum decision) (inability to communicate with counsel as result of COVID-related precautions is valid ineffectiveness-of-counsel basis).

While it is clear to this Court that Fountain's disruptive and dilatory conduct resulted in him forfeiture of his right to counsel in his first two trials, there is nothing in the record suggesting that he acted in such a dilatory or obstructionist manner in his third trial.

Importantly, there is no evidence that any Rule 121 colloquy, let alone a proper colloquy, took place at the start of Fountain's third trial. It is well-established that for a waiver of counsel to be valid, a defendant must invoke a knowing, voluntary, and intelligent waiver, where he clearly understands the risks of abandoning that right. **See Commonwealth v. Tyler**, 360 A.2d 617, 620 (Pa. 1976). A proper colloquy requires the trial judge to elicit six distinct affirmations from a defendant, as set forth in Rule 121.[20] **See**

---

[20] Pursuant to Pa.R.Crim.P. 121(a)(2):

To ensure that the defendant's waiver of the right to counsel is knowing, voluntary, and intelligent, the judge or issuing authority, at a minimum, shall elicit the following information from the defendant:

(a) that the defendant understands that he or she has the right to be represented by counsel, and the right to have free counsel appointed if the defendant is indigent;

(b) that the defendant understands the nature of the charges against the defendant and the elements of each of those charges;

(c) that the defendant is aware of the permissible range of sentences and/or fines for the offenses charged;

(d) that the defendant understands that if he or she waives the right to counsel, the defendant will still be bound by all

*(Footnote Continued Next Page)*

*Commonwealth v. Phillips*, 141 A.3d 512, 517 (Pa. 2016); *see also* Pa.R.Crim.P. 121(a)(2).  While a defendant's "competent waiver of counsel . . . remains in effect through all subsequent proceedings **in that case** absent a substantial change in circumstances," *Phillips*, *supra* at 521 (emphasis added), "a waiver of counsel colloquy must occur at **every 'critical stage' of a criminal proceeding**." *Commonwealth v. Baker*, 464 A.2d 496, 499 (Pa. Super. 1983) (emphasis added).[21]  This concept, referred to as the "ongoing waiver" rule, was established by the Eighth Circuit in *Davis v. United States*, 226 F.2d 843, 840 (8th Cir. 1955), and first adopted in Pennsylvania in *Phillips*, *supra*.[22]  The rule has not been applied in our

_____

> the normal rules of procedure and that counsel would be familiar with these rules;
>
> (e) that the defendant understands that there are possible defenses to these charges that counsel might be aware of, and if these defenses are not raised at trial, they may be lost permanently; and
>
> (f) that the defendant understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently; and that if errors occur and are not timely objected to, or otherwise timely raised by the defendant, these errors may be lost permanently.

Pa.R.Crim.P. 121(a)(2).

[21] While it is advisable that the trial judge conduct the waiver colloquy, a defendant may still validly waive the right to counsel where counsel for one of the parties conducts the waiver colloquy.  *See Commonwealth v. McDonough*, 812 A.2d 504, 508 (Pa. 2002).

[22] In *Davis*, *supra*, the defendant entered a guilty plea to the charge of conspiring to kidnap and transport a victim from Minnesota to Illinois.  On
*(Footnote Continued Next Page)*

Commonwealth in the context of a retrial following mistrials such as in the instant appeal. Because no Pennsylvania case has addressed the question of whether prior mistrials obviate the need for a new Rule 121 colloquy in a subsequent retrial, even when a defendant has previously forfeited his right to counsel and seeks to proceed *pro se* in that subsequent proceeding, this is an issue of first impression.

Fountain's third jury trial began on September 27, 2021. At the outset of that proceeding, Fountain indicated he did want standby counsel, but wanted different standby counsel. *See* N.T. Jury Trial III, 9/27/21, at 4. In particular, Fountain told the court he no longer wanted his second appointed standby counsel, Attorney Gross, to represent him at the third trial, *see* N.T. Jury Trial III 9/27/21, at 3-4, because "he had not seen Attorney Gross for a while and [] they had not gone over a strategy for trial." *Id.* Fountain also expressed his displeasure with Attorney Gross' decision "not [to] ask the questions that [Fountain] would like to [ask the alleged victim]." *Id.* at 6.

---

appeal, the defendant claimed that he did not know of his constitutional right to counsel when he appeared for his arraignment on June 3, 1935, and, thus, that he did not waive that right before he was sentenced. Davis also claimed that he was incapable of intelligently and competently waiving any such right "because of alleged happenings between the time of his arrest, June 1st, and the arraignment on June 3rd." *Id.* at 838. The Court concluded that the record supported the conclusion that Davis had competently waived his right to counsel at his arraignment and that "[i]t would be straining human credulity to say that [Davis] did not possess the same knowledge and intelligence four days later [when he was sentenced] on June 7th." *Id.*

- 19 -

Immediately prior to the start of his third trial, when Fountain was asked if he could proceed to trial on the condition Attorney Gross briefly leave the courtroom to attend to another proceeding, *see id.* at 7, Fountain requested that his standby counsel be seated with him for the entirety of trial. *Id.* Then, during *voir dire*, with Fountain present in the courtroom, the trial court explained **to the potential jurors** the following:

> Now, before we go any further, it's important that you know that the Defendant in this case, [] Fountain, has decided to represent himself. He has the right to represent himself. What that means is he is acting as his own lawyer. Do be aware that before he indicated to the court that he wanted to do that, he was told that he does have the right to have a lawyer and that he has the right to have a lawyer appointed to represent him free of any charge to him. He also indicated that he understood the nature of the charges against him and the elements of each of those charges and that he was aware of the permissible range of sentences and/or fines for the offenses charged should he be convicted. Furthermore, he indicated that he understood that if he waived his right to a lawyer, he would still be bound by all the normal rules and procedures and that a lawyer would be familiar with those rules.

N.T. Jury Trial III, 9/27-9/28/21, at 38-39.

It is well-established that a waiver of counsel colloquy is required at critical stages of trial proceedings "that are characterized by an opportunity for the exercise of judicial discretion or when certain legal rights may be lost if not exercised at that stage." *Commonwealth v. Johnson*, 828 A.2d 1009, 1014 (Pa. 2003); *see also Baker*, *supra* at 1180. "**Regardless of the defendant's prior experience with the justice system**, a 'penetrating and

comprehensive' colloquy is mandated." ***Commonwealth v. Owens***, 750 A.2d 872, 876 (Pa. Super. 2000) (emphasis added) (citing ***Commonwealth v. Dale***, 428 A.2d 1006, 1007 (Pa. Super. 1981)). Additionally, "[w]hen reviewing a trial court's basic compliance with the requirements of Rule 121, we do not first apply a 'totality of the circumstances' test. [Rather,] we look at the totality of the relevant circumstances only after we decide the trial court has met the minimum requirements of Rule 121." ***Phillips***, ***supra*** at 853-84.[23] ***See also Commonwealth v. Griffin***, 292 A.3d 1123, *19 (Pa. Super. filed Jan. 26, 2023) (non-precedential decision) (Court vacated defendant's judgment of sentence and remanded for new trial where trial court considered defendant's "efforts to prepare for self-representation" and, using totality of circumstances analysis, concluded defendant demonstrated "awareness of the essential elements for a valid waiver of counsel colloquy").

The trial court's discussion regarding Fountain's right to represent himself *directed to the jurors* does not eliminate the requirement to properly colloquy Fountain. While jurors should be apprised of the rules and procedures regarding a defendant's right to self-representation during trial, it is the *pro se* defendant whose life or liberty is at stake during a criminal trial. Due to the grave risks associated with a defendant's decision to represent himself, a trial court is imputed with a "serious and weighty responsibility [of]

---

[23] Even with the aid of standby counsel, the colloquy requirement is not relieved. ***Commonwealth v. Brazil***, 701 A.2d 216, 219 (Pa. 1997).

determining whether the there is an intelligent and competent waiver **by the** [**defendant**]." *Commonwealth v. Cavell*, 220 A.2d 611, 614 (Pa. 1966) (emphasis added).

Instantly, there is no record evidence that Fountain understood the significance of waiving his right to counsel in the third trial, let alone any proof that the court met even the minimum colloquy requirements of Rule 121. *Phillips*, *supra* at 853-84. Our case law is clear—"waiver cannot be presumed in a silent record." *Commonwealth v Noonan*, 285 A.2d 523, 525-26 (Pa. 1971). *See also Cavell*, *supra* at 614 ("The burden of showing a voluntary understanding and intelligent waiver of counsel is on the Commonwealth where the record is silent[.]") (citation omitted).

Moreover, Fountain's personal experience in proceeding *pro se* in his first two trials did not eliminate the need for a proper waiver of counsel colloquy at the start of his third trial. *See Commonwealth v. Payson*, 723 A.2d 695, 704 (Pa. Super. 1999) (even though defendant was "not a stranger to the criminal justice system," trial court's omission of three elements of waiver of counsel colloquy was reversible error necessitating vacatur of defendant's sentence and remand for new trial); *Commonwealth v. Dale*, 428 A.2d 1006, 1007 (Pa. Super. 1981) (holding court "did not conduct a thorough and comprehensive colloquy with [defendant where] . . . trial court merely concluded, without sufficient inquiry, that [defendant's] prior trial experience as a criminal defendant was sufficient to allow a voluntary, intelligent, understanding waiver of counsel").

## Conclusion

Pennsylvania courts have consistently emphasized that a defendant should have the maximum amount of information available in order to make an informed decision as to their retention of counsel, and that decision requires a defendant be colloquied in each of the six areas set forth in Rule 121. *See Commonwealth v. Robinson*, 940 A.2d 455, 460 (Pa. Super. 2009) ("Regardless of how unambiguous a defendant's expression may be, without a colloquy the court cannot ascertain that the defendant fully understands the ramifications of a decision to proceed *pro se* and the pitfalls associated with his lack of legal training."); *see also Commonwealth v. Brazil*, 701 A.2d 216, 219 (Pa. 1997) (even though defendant unequivocally asserted right to self-representation at trial, where **no colloquy was conducted** to ascertain waiver was "knowing and intelligent," waiver deemed invalid). Fountain's experience from his prior two trials does not translate into an automatic waiver of counsel in his third, subsequent trial. *Houtz*, *supra*; *Payson, supra*. While Fountain's conduct in the prior two trials was consistent with findings of forfeiture, that prior conduct did not carry over to his third trial to suggest forfeiture under a totality of the circumstances. The trial court had a significant period of time before Fountain's third trial to ascertain his knowing, voluntary, and intelligent relinquishment of his right to counsel. In fact, more than two years elapsed from the start of Fountain's first trial until the final judgment of sentence in the third trial.

Accordingly, we hold that prior mistrials do not obviate the need for a proper Rule 121 colloquy in a subsequent retrial. This requirement attaches even when a defendant, who, because of his behavior in the prior proceeding has previously forfeited his right to counsel, seeks to proceed *pro se* in a subsequent proceeding. Rather, a proper Rule 121 waiver colloquy is required at each new proceeding, where, as here, a defendant's constitutional right to counsel is implicated.

Judgment of sentence vacated. Case remanded for a new trial. Jurisdiction relinquished.

Stevens, President Judge Emeritus joins this Memorandum.

Bowes, J. files a Concurring Memorandum.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/14/2023